

DA 06-0453

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 327

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

BIANCA WILSON,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2005-0405
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Raymond G. Kuntz, Attorney at Law, Red Lodge, Montana

        For Appellee:

            Hon. Mike McGrath, Montana Attorney General, Kathy Seeley,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  August 29, 2007

Decided:  December 11, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellant Bianca Wilson appeals from her felony conviction for tampering with evidence in the Thirteenth Judicial District, Yellowstone County. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     On September 13, 2004, Wilson, an individual named Jesus Villarreal, and a 17-year old girl named Candra Vasquez, drove to Lovell, Wyoming in order to meet another individual named Justin Marchant. Marchant, as it turned out, was a confidential informant for law enforcement officials in Wyoming. Wilson and Villarreal drove to Lovell in a blue 2000 Ford Taurus which Villarreal had borrowed from another woman named Amber Mendenhall. Marchant was driving a pickup truck when he met these three individuals. After meeting, they switched cars, with Vasquez driving the pickup and Marchant getting into the Taurus with Villarreal and Wilson. Shortly thereafter, Wilson allegedly shot Marchant, and Marchant either jumped out or was ejected from the Taurus.

¶3     Villarreal and Wilson drove back to Billings, Montana in the Taurus. Once there, Wilson departed in her own car, while Villarreal drove the Taurus to his trailer in order to return it to Mendenhall. After meeting Mendenhall, the two drove off in the Taurus. Mendenhall noticed blood stains on the dashboard and a crack in the windshield. Villarreal told her there had been a fight in the car and that individuals involved might retaliate against them. Mendenhall then drove the car to a remote location and left it there, and at that time observed a bullet on the floor in the back. After getting a ride back into town with a friend named Lysa Chavira, Mendenhall, Wilson, Villarreal and Chavira

2

met up and proceeded to spend some time together smoking methamphetamine in various motels around Billings for the next three to four days.

¶4     On September 14, 2004, the body of Justin Marchant was discovered on a gravel road in Carbon County, Montana. Law enforcement officials later determined that Marchant died from two gunshot wounds. On September 15, Wilson procured the keys to the Taurus and got a ride to it from Chavira. The two of them removed Mendenhall's belongings from the car and cleaned up some of the blood stains. At that time, Wilson also picked up her rosary which she had left in the car. According to Chavira, there was no weapon in the Taurus when they visited it and cleaned it. Chavira drove back to the motel to meet Villarreal and Mendenhall, while Wilson left in the Taurus. When Wilson returned later to the motel room, she was not driving the Taurus.

¶5     According to testimony given at trial, on September 16, Wilson, visibly upset, brought a newspaper into the hotel room where all these individuals were staying, and stated that she needed to go clean out the Taurus. Mendenhall later testified that the newspaper contained an article about Marchant's death. Later that afternoon, Villarreal and Chavira saw the Taurus parked on a street on the north side of Billings. Villarreal obtained a set of keys to the Taurus from a third party, and later returned by himself and moved it to an apartment complex on the south side of Billings. Later that evening, Wilson drove to Villarreal's trailer in another car and met with Villarreal and Mendenhall. According to Mendenhall, during this encounter Wilson told her that she knew where the Taurus was, that she was going to go get it, and that Mendenhall would get it back when Wilson "knew what was going on."

3

¶6     Soon thereafter, Villarreal, Mendenhall and Chavira went to another motel, this time without Wilson. Around mid-day of September 17, investigators caught up with them at the motel and questioned them. Villarreal told the investigators where the Taurus was located. He also called Wilson, in the presence of the investigators, and had her meet them at the motel. When she arrived there, she was arrested.

¶7     When investigators located the car, they discovered blood stains, a bullet casing, a rosary bead matching Wilson's rosary, and a spray bottle, along with other items of evidence. They also discovered evidence that blood had been cleaned from the car. They did not, however, uncover any evidence of a murder weapon, and to this date the weapon used in the shooting of Marchant has never been located or identified.

¶8     Initially, Wilson was charged with aggravated kidnapping and deliberate homicide and Villarreal was charged with aggravated kidnapping, but those charges were later dismissed. On April 27, 2005, Wilson and Villarreal were charged in Yellowstone County with separate counts of tampering with evidence of the homicide of Marchant. In the Information against Wilson, the State alleged that between September 13, 2004, and September 17, 2004 she "altered, destroyed, concealed or removed a blue Ford Taurus automobile and its contents with the purpose to impair its veracity or availability in such investigation." A trial for Wilson was scheduled for February 6, 2006. Villarreal later agreed to a plea deal with the State, and was granted immunity in exchange for testifying against Wilson at trial.

¶9     On the morning of the trial, while the parties were in chambers with the presiding judge, the State announced that part of the evidence tampering charge would concern

4

Wilson's concealing or tampering with the gun allegedly used to shoot Marchant. Wilson's counsel objected, arguing that neither the Information, nor the affidavit in support of the Information, contained any allegation that Wilson had tampered with a gun as a part of the tampering with evidence count. The District Court noted this objection, but nonetheless allowed the State to put on evidence concerning Wilson's concealing or destruction of the murder weapon as a part of the evidence tampering charge. The District Court noted that the Information charged Wilson with tampering with the Taurus and its contents and stated that "if the gun was in the vehicle, that evidence comes in."

¶10 At trial, Villarreal was the only witness who testified that Wilson tampered with the murder weapon. Because of previous rulings made by the District Court, Wilson was not permitted to introduce any evidence concerning Villarreal's alleged knowledge that Marchant was a confidential informant, that Marchant owed Villarreal money for drugs, that Villarreal had threatened to kill Marchant on a previous occasion, or that Villarreal had a motive to conceal the evidence of the murder and shift the attention of the authorities to another suspect. Chavira and Mendenhall also testified. When they were shown photographs of the Taurus taken by law enforcement officials after it was recovered, they both testified that the blood which they had previously seen on the dashboard had been cleaned off. Additionally, Chavira testified that the large spray bottle which police found in the car when they recovered it was not there when she had last visited the Taurus with Wilson.

¶11 At the close of the State's case-in-chief, Wilson moved for a directed verdict, arguing that the "accomplice testimony corroboration rule," codified at § 46-16-213,

5

MCA, required a directed verdict because Villarreal was a named co-defendant and his testimony was not corroborated by other evidence. Additionally, Wilson argued Mendenhall and Chavira were also co-conspirators even though they had not been charged with evidence tampering. The District Court denied the motion for a directed verdict, concluding that under *State v. Blackcrow*, 1999 MT 44, 293 Mont. 374, 975 P.2d 1253, the issue of whether these individuals were co-conspirators would be submitted to the jury if necessary.

¶12 After all the evidence had been presented and the jury instructions were being settled, the District Court found there was no evidence that Chavira and Mendenhall were legally accountable for the crime of evidence tampering, and so did not submit the issue of whether they were co-conspirators to the jury or allow accountability instructions regarding their testimony. With respect to Villarreal, however, the District Court ordered the jury be given an accountability instruction in accordance with *Blackcrow. Blackcrow*, ¶ 21. The jury ultimately convicted Wilson of evidence tampering, and she was sentenced to five years imprisonment with the Department of Corrections. Wilson timely appeals.

## ISSUES

¶13 We state the issues on appeal as follows:

¶14 **Issue One:** Did the District Court abuse its discretion and allow the State to improperly amend the Information charging Wilson with tampering with evidence, by permitting the State to argue that Wilson tampered with the gun which was allegedly used to kill Marchant?

6

¶15    **Issue Two**: Did the District Court err when it denied Wilson's motion for a directed verdict on the charge of tampering with evidence?

¶16    **Issue Three**: Did the District Court violate Wilson's right to a unanimous jury verdict because some members of the jury might have convicted her of tampering with the gun, while others might have convicted her of tampering with the car?

¶17    **Issue Four**: Did the District Court abuse its discretion by limiting the admission of evidence concerning Villarreal's motives to murder Marchant?

STANDARD OF REVIEW

¶18    We apply the abuse of discretion standard when reviewing a district court's discretionary rulings in a criminal case. *State v. Beavers*, 1999 MT 260, ¶ 20, 296 Mont. 340, ¶ 20, 987 P.2d 371, ¶ 20. "Abuse of discretion occurs only when the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *State v. English*, 2006 MT 177, ¶ 23, 333 Mont. 23, ¶ 23, 140 P.3d 454, ¶ 23 (quotation omitted).

¶19    We apply the abuse of discretion standard when reviewing a district court's evidentiary rulings. *Beavers*, ¶ 20. With respect to evidentiary rulings, we afford the district courts "broad discretion . . . to limit the scope of cross-examination to those issues it determines are relevant to trial." *Beavers*, ¶ 20. A district court's decision whether to allow the amendment of an Information is also reviewed for an abuse of discretion. *State v. Abe,* 1998 MT 206, ¶ 28, 290 Mont. 393, ¶ 28, 965 P.2d 882, ¶ 28. As we have stated previously, "[a]n information must reasonably apprise the accused of the charges against

7

him, so that he may have the opportunity to prepare and present his defense." *City of Red Lodge v. Kennedy*, 2002 MT 89, ¶ 10, 309 Mont. 330, ¶ 10, 46 P.3d 602, ¶ 10.

¶20 A district court's denial of a motion for a directed verdict, however, is reviewed de novo. *State v. Swan*, 2007 MT 126, ¶ 17, 337 Mont. 326, ¶ 17, 160 P.3d 511, ¶ 17. When reviewing a district court's decision in this context, we inquire "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *English*, ¶ 23 (quotation omitted).

## DISCUSSION

¶21 **Issue One:** Did the District Court abuse its discretion and allow the State to improperly amend the Information charging Wilson with tampering with evidence, by permitting the State to argue that Wilson tampered with the gun which was allegedly used to kill Marchant?

¶22 On appeal, Wilson asserts the District Court abused its discretion and permitted a "de facto" amendment of the Information charging her with tampering with evidence, when it allowed the State to argue that Wilson concealed or destroyed the gun allegedly used to kill Marchant. Wilson notes that, under § 46-11-205(3), MCA, the State may amend the form of the information at any time prior to the verdict. Amendments of substance, however, are prohibited within five days of trial. Section 46-11-205(1), MCA. Wilson asserts that presentation of evidence concerning her concealing or destroying the murder weapon is a substantive amendment to the Information because it "relies on an entirely separate set of proofs, and entails a separate set of defenses, than does the

8

accusation that Wilson tampered with evidence by either cleaning or hiding the Taurus." Wilson argues that the facts of this case are analogous to *Kennedy* and that the District Court should have, but failed to, follow the procedure for re-arraignment on the amended Information under § 46-11-205(2), MCA.

¶23 Wilson asserts that nothing in the affidavit filed in support of the Information alleges that she tampered with a gun. Because of this, Wilson maintains she was never put on notice of the specific charge of tampering with a gun, and that, further, the District Court was "deprived of the opportunity to evaluate whether or not the charge was supported by probable cause." As a result, Wilson was "denied the opportunity to challenge the existence of probable cause with respect to the charge of tampering with a gun."

¶24 The State responds that the Information filed in this case—which charged Wilson with tampering with the "automobile and its contents"—was legally sufficient to apprise Wilson of the charges against her. The State argues that a "person of common understanding would have sufficient information from these charging documents to know what the State had charged and what she must defend." The State points out that the affidavit in support of the Information states that Marchant had been shot two times, and that Mendenhall had seen evidence of ammunition on the floor of the Taurus. Further, there were statements in the affidavit which referred to allegations that Wilson regularly carried weapons, that Villarreal told Mendenhall and investigators that Wilson had shot Marchant, and that Wilson told Chavira about the shooting of Marchant as well. Taken together, the State asserts, the fact that it planned to argue that Wilson had tampered with

the murder weapon "could hardly have been a surprise to Wilson." In light of these facts, the State maintains there was no need to amend the Information and that the charge filed against Wilson was legally sufficient.

¶25 "An information is a written accusation of criminal conduct prepared by a prosecutor in the name of the State. The information must reasonably apprise the accused of the charges against him, so that he may have the opportunity to prepare and present his defense." *State v. Allen*, 278 Mont. 326, 330, 925 P.2d 470, 472 (1996). We read the information, and the affidavit in support thereof, as a whole to determine the sufficiency of the charging documents. *State v. Harlson*, 2006 MT 312, ¶ 24, 335 Mont. 25, ¶ 24, 150 P.3d 349, ¶ 24. We apply the "common understanding" rule to determine if the charging language of a document allows a person to understand the charges against him. *State v. Brogan*, 261 Mont. 79, 86, 862 P.2d 19, 23 (1993). Under this standard, "the test of the sufficiency of a charging document is whether the defendant is apprised of the charges and whether he will be surprised." *Brogan*, 261 Mont. at 86, 862 P.2d at 23.

¶26 An information may be amended with leave of the district court. Amendments of form are allowed any time before the verdict. Section 46-11-205(3), MCA. "An amendment is one of form when the same crime is charged, the elements of the crime and the proof required remain the same and the defendant is informed of the charges against him." *Kennedy*, ¶ 11. Amendments of substance are prohibited within five days of trial. Section 46-11-205(1), MCA. "To differentiate amendments of form and substance, we examine whether an amendment to an information or complaint alters the nature of the offense, the essential elements of the crime, the proofs or the defenses." *Kennedy*, ¶ 14.

10

¶27    In *Kennedy*, we considered whether a district court abused its discretion in allowing the amendment of a criminal complaint on the morning of trial. In that case, defendant Kennedy had originally been charged in Red Lodge City Court with a count of stalking under § 45-5-220(1)(b), MCA, due to an incident of stalking which occurred on October 5, 1999. *Kennedy*, ¶ 3. Kennedy was convicted in city court and sought a new trial in district court. There, Kennedy moved to dismiss the charges against him on double jeopardy grounds because the City intended to use prior convictions of Kennedy for violation of an Order of Protection issued against him 1998 to prove the "repeated" element of the stalking charge. *Kennedy*, ¶ 5. In opposing his motion, the City of Red Lodge alleged eleven incidents of stalking which would be sufficient to support the charges. The district court denied Kennedy's motion and the case proceeded to trial.

¶28    On the morning of trial, the State asked leave of the district court to amend the complaint. The amended complaint alleged six specific incidents of stalking, and also stated that between December 1997 and October 1999, Kennedy's "acts of stalking constituted a continuing course of conduct within the meaning of § 45-1-205(7)(a), MCA." *Kennedy*, ¶ 7. Kennedy objected to this amended complaint, but his objection was overruled. Kennedy was ultimately convicted of stalking and appealed his conviction to this Court.

¶29    On appeal, Kennedy argued that the amended complaint was a substantive amendment and should have been denied because it was granted on the morning of the trial. We agreed with Kennedy and reversed the district court. We concluded that the addition of these new episodes to the charges against him along "with the allegation that

11

all incidents formed a continuous course of conduct dating back over two years, constituted a change of substance that added new proofs to the State's burden and required Kennedy to prepare new defenses." *Kennedy*, ¶ 16.

¶30 Wilson argues that *Kennedy* is applicable to the instant case, and supports her argument that the District Court allowed a "de facto" amendment to the Information on the morning of trial, in violation of § 46-11-205(1), MCA. We disagree. Rather, we agree with the State that the Information and the affidavit in support, taken together, reasonably apprised Wilson of the fact that the tampering with evidence charge could cover any actions she may have taken in concealing or destroying the contents of the Taurus, including the murder weapon used to kill Marchant. The Information alleges that Wilson tampered with the Taurus and its contents between September 13, 2004, the day of Marchant's murder, and September 17, 2004, the date of Wilson's arrest. See ¶ 8. As a result, the tampering charge encompasses whatever was in the Taurus between those dates that would have aided law enforcement in investigating the homicide of Marchant. It is evident from the charging documents, taken as a whole, that the State believed Wilson was involved in Marchant's murder, that a gun was used to kill Marchant while in the Taurus and was never recovered, and that Wilson allegedly carried weapons. Although the Information did not specifically state that she was charged with tampering with the murder weapon, it generally referred to the Taurus and its contents which, in light of the allegations in the charging documents, included anything in the Taurus. Moreover, as the State notes, Wilson did not object to the State's argument that blood stains, rosary beads, and bullets fell within the purview of the charge. If these fell within

12

the "automobile and its contents," then the murder weapon would as well, especially given the fact that the charging documents allege Marchant was shot inside the Taurus by Wilson.

¶31     As a result, we conclude that allowing the State to argue Wilson tampered with the murder weapon as part of the underlying charge did not constitute a "de facto" amendment of the Information.  In fact, it did not amend the Information in any way. Unlike *Kennedy*, where new elements to the charges were added by virtue of the amended complaint, such is not the case here. Based on the charging documents themselves, Wilson should not have been surprised that the State would argue she tampered with the contents of the Taurus, including the murder weapon. While the original Information could have alleged separate counts of tampering with respect to each piece of evidence (i.e., the Taurus itself by cleaning up the blood, ammunition, the removal of the rosary, and the disposal or concealment of the gun), the State chose to charge Wilson with only one count for her actions in relation to tampering with the Taurus and its contents, and she was in turn convicted on only one count.

¶32     For these reasons, we conclude the District Court did not abuse its discretion and allow the State to improperly amend the Information by permitting it to argue that Wilson tampered with the gun which was allegedly used to kill Marchant.

¶33     **Issue Two**:  Did the District Court err when it denied Wilson's motion for a directed verdict on the charge of tampering with evidence?

¶34     Wilson argues the District Court improperly denied her motion for a directed verdict on the issue of tampering with a gun at the close of the State's evidence because

13

evidence for this charge was based solely on the uncorroborated testimony of Villarreal, a co-conspirator. However, as the State observes, there was not a separate charge for tampering with the gun allegedly used to kill Marchant. The charge of tampering with evidence included the Taurus and its contents. Had there been a separate charge of tampering with a gun or had Villarreal's testimony been the only evidence presented in support of this charge, Wilson's argument here would carry far more weight. However, because there was sufficient testimony and circumstantial evidence from sources other than Villarreal's testimony to support the charge of tampering with the Taurus and its contents, the District Court did not err in denying Wilson's motion.

¶35 **Issue Three**: Did the District Court violate Wilson's right to a unanimous jury verdict because some members of the jury might have convicted her of tampering with the gun, while others might have convicted her of tampering with the car?

¶36 Wilson argues the verdict for tampering with evidence in this case violated her right to a unanimous verdict under Article II, Section 26 of the Montana Constitution. We agree with the State that she has not preserved this issue for appeal because she did not object to the lack of a specific unanimity instruction on this point at the time that jury instructions were settled. See Section 46-16-410(3), MCA. Under § 46-20-104(2), MCA, "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)." Because Wilson does not allege that any of the exceptions under subsection 701(2) applies, we will not consider this argument for the first time on appeal. *State v Weaver*, 1998 MT 167, ¶ 24, 290 Mont. 58, ¶ 24, 964 P.2d 713, ¶ 24.

¶37 Recognizing her failure to object, Wilson urges us to review for plain error, arguing that the District Court violated her fundamental right to a unanimous jury verdict. We decline Wilson's invitation to apply the plain error doctrine with respect to the issue of a unanimous jury verdict in this case.

¶38 Under the doctrine of plain error, this Court has the discretion to review issues raised for the first time on appeal in spite of the fact the criteria under § 46-20-701(2), MCA, are not satisfied, so long as the alleged error of the district court implicates a defendant's constitutional rights and a failure "to review the claimed error at issue may: (1) result in a manifest miscarriage of justice; (2) leave unsettled the question of the fundamental fairness of the trial or proceedings; or (3) compromise the integrity of the judicial process." *Weaver*, ¶ 25.

¶39 The tampering with evidence count charged Wilson with tampering with the Taurus and its contents. Although the State could have framed the tampering charges more specifically, and charged separate counts for each act, it was not required to do so. Accordingly, it would not compromise the integrity of the judicial process, result in a manifest miscarriage of justice, or leave unsettled the fundamental fairness of the trial, if some jurors reached different conclusions on what specifically Wilson tampered with, so long as they all agreed that she was guilty of tampering with the Taurus and its contents, as the State charged. All that is ultimately required is that the jury unanimously agree to the particular set of facts necessary to sustain a conviction for the crime alleged in the Information. *Weaver*, ¶ 34. In this case, the pertinent set of facts is the alleged tampering with evidence of Marchant's homicide, including the Taurus and its contents.

¶40   For these reasons, we decline to review this matter for plain error.

¶41   **Issue Four**: Did the District Court abuse its discretion by limiting the admission of evidence concerning Villarreal's motives to murder Marchant?

¶42   During opening statements, the District Court prohibited Wilson from referring to evidence concerning Villarreal's motives to kill Marchant. The District Court ruled that this evidence was not "relevant to the strict issue of whether or not Ms. Wilson tampered with evidence as these elements are defined in the criminal code. So we're not going to try the homicide here or anybody's motives for a homicide, that's a different case . . . ." Although Wilson argued that Villarreal's motivation to kill Marchant transferred to his motive to cover up the crime by tampering with the evidence of his murder, the District Court disagreed. In response to Wilson's query about the parameters of her opening statement, the District Court ruled that Wilson could not mention Villarreal's knowledge of Marchant's status as a confidential informant, any debts for drugs owed Villarreal by Marchant, or any threats by Villarreal to kill Marchant.

¶43   During Wilson's cross-examination of Villarreal, Wilson did not examine Villarreal on any of these topics, or ask the District Court to rule on the parameters of Villarreal's cross examination. Wilson claims that it would have been misconduct on her part to do so, in light of the explicit instructions given by the District Court during opening statements. Because of this limitation, Wilson argues she was unable to develop evidence concerning Villarreal's prior false statements and his motive to cover up the homicide, as well as his plan to cover up evidence of the homicide of Marchant.

Accordingly, Wilson argues, the District Court abused its discretion and violated her constitutional right to confront the witnesses against her.

¶44    The State counters that during her cross-examination of Villarreal, Wilson never asked the District Court to rule on the parameters of the cross-examination. Further, the State contends that Wilson had ample opportunity to cross-examine Villarreal about his motives in testifying. Specifically the State notes that Wilson cross-examined Villarreal about his plea of nolo contendere on tampering with evidence, his grant of immunity for testifying, his drug use and whether he provided drugs to others, as well as other inconsistencies in his testimony. The State argues that the main purpose of the right to confrontation was served in this case, even though both parties were prohibited from presenting evidence relating to the underlying homicide, because Wilson had the opportunity to examine and expose Villarreal's motives in testifying.

¶45    The right of a defendant in a criminal trial to confront the witnesses against him is contained in the Sixth Amendment to the U.S. Constitution and Article II, Section 24 of the Montana Constitution. "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986) (alterations and quotations omitted). This includes an opportunity to expose the witness' motivation in testifying. *Van Arsdall*, 475 U.S. at 678-9, 106 S. Ct. at 1435. However, the constitutional guarantee of the Confrontation Clause does not mean that a defendant may cross-examine witnesses on any subjects in any manner whatsoever, without the imposition of limits by the trial judge.

17

> On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985) (*per curiam*).

¶46 Given the circumstances at bar, we conclude the District Court did not abuse its discretion in limiting evidence about Villarreal's motives to kill Marchant during opening statements. The standard for an abuse of discretion is whether "the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *English*, ¶ 23. Moreover, we afford district courts "broad discretion . . . to limit the scope of cross-examination to those issues it determines are relevant to trial." *Beavers*, ¶ 20. Arguably, evidence of Villarreal's motives to murder Marchant could bear on whether he would lie about the evidence tampering charge against Wilson in order to shift the blame to her. At the same time, it could also turn the tampering with evidence trial into a trial on the murder of Marchant— a course of action which the District Court wisely foreclosed in this case because it was outside the scope of the tampering charge, and would confuse the jury as to the issues before it.

¶47 Assuming, *arguendo*, that the limitations placed on opening statements applied to Wilson's cross of Villarreal, we nonetheless agree with the State that Wilson did have the opportunity to cross-examine Villarreal on his motives for testifying and inconsistencies

in his statements, see ¶ 44, and that this opportunity satisfied Wilson's constitutional right to confront the witnesses against her. The limitations placed on the presentation of evidence concerning Villarreal's motives to kill Marchant or cover up evidence of his homicide by the District Court did not exceed the bounds of reason resulting in substantial injustice to Wilson. Had Wilson been charged with homicide, the requirements of the Confrontation Clause would likely require more. But here they do not, because Wilson and Villarreal were both charged with tampering with evidence, not with homicide.

¶48 Accordingly, we hold the District Court did not abuse its discretion by limiting the admission of evidence concerning Villarreal's motives to murder Marchant during opening statements.

## CONCLUSION

¶49 For these reasons, we affirm Wilson's conviction.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS

19