

DA 11-0627

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 3

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

E.M.R.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DJ 2011-15
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy G. Schwartz; NG Schwartz Law, PLLC; Billings, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General; Helena, Montana

          Leo Gallagher, Lewis and Clark County Attorney; Katie Jerstad, Melissa
Broch, Deputy County Attorneys; Helena, Montana

Submitted on Briefs:  November 14, 2012
Decided:   January 8, 2013

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 After a four-day trial in August 2011, a Lewis and Clark County jury found that E.M.R., a youth under the age of eighteen, had committed five misdemeanor offenses of "dog at large," in violation of County Ordinance # 4-2006-13, and one felony offense of aggravated animal cruelty, in violation of § 45-8-217(2), MCA. E.M.R. appeals from the dispositional order entered by the First Judicial District Youth Court. We affirm in part, reverse in part and remand for further proceedings.

¶2 We address the following issues on appeal:

¶3 *1. Did the Youth Court abuse its discretion when it instructed a deadlocked jury on the legislative purpose of the Youth Court Act by reading the jury § 41-5-102, MCA?*

¶4 *2. Did the Youth Court err by denying E.M.R.'s motion to dismiss the five "dog at large" offenses based on an erroneous statutory reference in the amended charging documents?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 E.M.R. grew up in the Scratchgravel Hills near Helena, Montana, with her mother and father. E.M.R.'s mother was a hoarder who, in addition to collecting large amounts of "junk," collected animals, including numerous goats, dogs, horses, and cats. In November 2010, when E.M.R. was seventeen years old, her mother died. Although E.M.R. was living in Carter, Montana, at the time, her father told Sue Cecrle, an animal control officer for Lewis and Clark County, that the animals belonged to E.M.R. and that she was responsible for them. E.M.R. asked her father, who was in his mid-seventies, to

2

feed and water the animals when she was out of town and her father testified that he did so "twice a day every day."

¶6    Despite that arrangement, neighbors grew concerned about the welfare of E.M.R.'s animals and they reported those concerns to law enforcement. Cecrle responded by visiting the property and speaking with E.M.R.'s father about either taking better care of the animals or finding them new homes. E.M.R. and her father agreed to surrender seven dogs and four goats and to work on finding suitable homes for many of the remaining animals.

¶7    Neighbors continued to voice their concerns to animal control that E.M.R.'s father physically was not able to feed and water the remaining animals, especially when the weather turned cold and icy. In December of 2010, Cecrle returned to the property with a veterinarian to evaluate the condition of the horses. Cecrle and the veterinarian informed E.M.R. that she needed to keep water and hay in front of the horses at all times, de-worm them and trim their hooves within the week. E.M.R. failed to trim the horses' hooves; instead, she decided to give away many of the animals. In late December, Cecrle verified that the only animals E.M.R. still possessed were four horses and various dogs.

¶8    In February 2011, Cecrle again visited the property in response to reports that E.M.R. had acquired additional animals. She viewed at least five new horses before E.M.R. asked Cecrle to leave unless she had a warrant. That next month, Cecrle responded to complaints that E.M.R.'s newly-acquired puppies were running freely around the neighborhood. Cecrle impounded four puppies and took them to the humane

3

society and E.M.R. claimed them the next day. One week later, another one of E.M.R.'s puppies escaped, was hit by a car, and suffered a broken leg.

¶9 In response to continued complaints about escaped dogs and malnourished horses, Cecrle obtained and executed a search warrant on the property in mid-March. She and other officers found several recently-born puppies and numerous dogs, some of which were caged or chained without access to food or water. They also found several dogs that had died—four dogs were found decomposing in a pile of sawdust and another dog, whose existence apparently was unknown to E.M.R. or her father, was found suffocated by a chain that was deeply embedded into the dog's neck. Cecrle also examined the ten horses found on the property. She later testified that they "weren't in bad condition" but were "a little on the lean side" and their hooves had not been trimmed. Cecrle also testified that the horses did not have any access to food or water on the day the warrant was executed.

¶10 Based on the foregoing, a Lewis and Clark County Sheriff's deputy issued a citation to E.M.R. for cruelty to animals in violation of § 45-8-211(b) and (d), MCA, and referred her to the Youth Court for further proceedings. One month later, the Lewis and Clark County Attorney filed a petition charging E.M.R. with being a delinquent youth for having committed two counts of animal cruelty, a misdemeanor, in violation of § 45-8-211(1)(b) and (d), MCA, respectively, as wells as two counts of aggravated animal

4

cruelty, a felony, in violation of § 45-8-217(2), MCA.[1]  In June 2011, the county attorney filed an amended petition further charging E.M.R. with having committed five offenses of "dog at large," a misdemeanor, "in violation of Montana Code Ann. § 4-2006-13."  In the supplemental affidavit filed simultaneously, the county attorney noted that E.M.R. was being charged with "five counts of dog at large, a misdemeanor, in violation of *Lewis and Clark County Ordinance* § 4-2006-13."  (Emphasis added.)  The State later filed a second amended petition, which also erroneously stated that E.M.R. was being charged with violating § 4-2006-13, MCA.

¶11 The Youth Court held a jury trial in August 2011.  At the close of the State's case, E.M.R.'s attorney requested that the counts of "dog at large" in violation of § 4-2006-13, MCA, be dismissed because that "statute does not exist."  The State explained that the citation to the Montana Code Annotated was a typographical error and that the petition should have cited to the county ordinance.  The court denied the motion because "the number [was] correct" and because E.M.R.'s attorney could not make "any real serious contention here that you didn't have notice of what [E.M.R.] was charged with factually and that you haven't been able to defend based on what [E.M.R.] was charged with."

¶12 During deliberations, the jury became deadlocked on the animal cruelty charges, reporting to the court that one juror was "unwilling to consider views contrary to his own" and therefore the jury was hung.  The jury foreman informed the court that

---

[1] E.M.R. turned eighteen approximately one month before trial, but was tried in Youth Court since the alleged offense was committed "prior to [E.M.R.] having become 18 years of age." Section 41-5-203(1), MCA.

"progress cannot be made under the present circumstances" and asked if the juror could be substituted with an alternate. The court conferred with counsel for E.M.R. and the State and decided to read the jury an instruction consistent with *Allen v. U.S.*, 164 U.S. 492, 17 S. Ct. 154 (1896). The parties agreed to that instruction and it is not at issue on appeal.

¶13 The State also suggested that "maybe some of the problems within the jury stem from a lack of understanding about youth court" and asked the court to read the "Proposed State's Instruction No. 22." That instruction quoted the legislative purpose of the Youth Court Act as codified in § 41-5-102, MCA. E.M.R.'s attorney objected to the instruction because "the jury is the trier of fact" and an instruction on the "purpose of the Youth Court Act . . . doesn't assist them in deciding the issues of fact." Even though the Youth Court previously had refused to give the proposed instruction, the court agreed to do so after the jury appeared to be deadlocked.

¶14 After receiving the additional instructions, the jury continued to deliberate for several hours. Ultimately, the jury returned a verdict finding that E.M.R. had committed the offense of dog at large on Counts I-V on the verdict form and the offense of aggravated animal cruelty on Count IX. The jury found that E.M.R. had not committed one count of animal cruelty and was unable to reach a verdict on the remaining two animal cruelty charges.

¶15 E.M.R. appeals the Youth Court's denial of her motion to dismiss as well as the court's decision to instruct the jury on the legislative purpose of the Youth Court Act.

6

**STANDARD OF REVIEW**

¶16 District courts have "broad discretion" when instructing the jury in a criminal case and we review jury instructions "for an abuse of discretion." *State v. Hocter*, 2011 MT 251, ¶ 14, 362 Mont. 215, 262 P.3d 1089. A court abused its discretion if it "acted arbitrarily or exceeded the bounds of reason resulting in substantial injustice." *State v. Dewitz*, 2009 MT 202, ¶ 66, 351 Mont. 182, 212 P.3d 1040 (citing *State v. Cybulski*, 2009 MT 70, ¶ 34, 349 Mont. 429, 204 P.3d 7). To constitute reversible error, jury instructions "must prejudicially affect the defendant's substantial rights." *State v. Christiansen*, 2010 MT 197, ¶ 7, 357 Mont. 379, 239 P.3d 949. We apply the same principles to proceedings held in youth court. *See In re T.J.B.*, 2010 MT 116, ¶ 16, 356 Mont. 342, 233 P.3d 341.

¶17 The denial of a motion to dismiss a petition in Youth Court is a question of law, which we review de novo "to determine whether the court correctly interpreted the law." *In re G.T.M.*, 2009 MT 443, ¶ 9, 354 Mont. 197, 222 P.3d 626 (citing *In re R.L.H.*, 2005 MT 177, ¶ 15, 327 Mont. 520, 116 P.3d 791).

**DISCUSSION**

¶18 *1. Did the Youth Court abuse its discretion when it instructed a deadlocked jury on the legislative purpose of the Youth Court Act by reading the jury § 41-5-102, MCA?*

¶19 After the jury indicated that it was deadlocked, the court instructed the jury to consider the legislative policies of the Youth Court Act by reading to it § 45-5-102, MCA. Instruction No. 22 provided:

7

Declaration of purpose. The Montana Youth Court Act must be interpreted and construed to effectuate the following express legislative purposes:

> (1) to preserve the unity and welfare of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of a youth coming within the provisions of the Montana Youth Court Act;

> (2) to prevent and reduce youth delinquency through a system that does not seek retribution but that provides:
> > (a) immediate, consistent, enforceable, and avoidable consequences of youths' actions;
> > (b) a program of supervision, care, rehabilitation, detention, competency development, and community protection for youth before they become adult offenders;
> > (c) in appropriate cases, restitution as ordered by the youth court; and
> > (d) that, whenever removal from the home is necessary, the youth is entitled to maintain ethnic, cultural, or religious heritage whenever appropriate;

> (3) to achieve the purposes of subsections (1) and (2) in a family environment whenever possible, separating the youth from the parents only when necessary for the welfare of the youth or for the safety and protection of the community;

> (4) to provide judicial procedures in which the parties are ensured a fair, accurate hearing and recognition and enforcement of their constitutional and statutory rights.

¶20   E.M.R. asserts that "the reading of Instruction 22 to the purportedly deadlocked jury was error and the error was not harmless." According to E.M.R., the court erred by encouraging the jury to consider factors unrelated to its factfinding mission. She contends that "[n]ot only did this instruction tell the jury it should give weight to a possible punishment when reaching a verdict, this instruction made it sound like E.M.R. would lose the chance to benefit from numerous services if the jury did not find in favor

8

of the State." The timing of the instruction exacerbated the prejudicial effect, E.M.R. claims, because the instruction was given after the jury had indicated that it was deadlocked.

¶21 Although the State "recognizes that this Court has previously held that instructing the jury on sentencing possibilities is prejudicial error," it contends that the Youth Court did not abuse its discretion when it instructed the jury on the purposes of the Youth Court Act because it "did not inform the jury about specific sentencing possibilities . . . ." We agree with E.M.R. that instructing the jury on the legislative policy of the Youth Court Act impermissibly injected irrelevant considerations into the finding of facts and prejudicially affected E.M.R.'s substantial rights.

¶22 The right to trial by jury in Montana "is secured to all and shall remain inviolate." Mont. Const. art. II, § 26. This fundamental right is guaranteed to Montana youths pursuant to the Youth Court Act, § 41-5-1502, MCA, and pursuant to Article II, Section 15 of the Montana Constitution.

¶23 We have declared that "one accused of a crime is entitled to have guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial . . . ." *State v. Williams*, 184 Mont. 111, 113, 601 P.2d 1194, 1196 (1979) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 484-85, 98 S. Ct. 1930, 1934-35 (1978)). In making that determination, the jury's "sole function is to decide the

9

defendant's guilt or innocence"; the defendant's potential punishment "is not [the jury's] concern." *State v. Zuidema*, 157 Mont. 367, 373-74, 485 P.2d 952, 955 (1971).

¶24 This principle—that a jury is not to consider the consequences of its verdict when it has no sentencing function—is a reflection of the different responsibilities of judge and jury:

> The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. *Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.* Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Shannon v. U.S.*, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424 (1994) (emphasis added). Similarly, we have held that "[i]n a non-capital case, the jury's verdict should not be influenced *in any way* by sentencing considerations"; therefore, "it is impermissible for a jury to give weight to the possible punishment when reaching a verdict." *State v. Stewart*, 2000 MT 379, ¶ 44, 303 Mont. 507, 16 P.3d 391 (emphasis added) (citing *State v. Brodniak*, 221 Mont. 212, 227, 718 P.2d 322, 332 (1986)).

¶25 The court's instruction advised the jury that the Youth Court Act did not seek retribution, but instead provided "a program of supervision, care, rehabilitation, detention, competency development, and community protection . . ." for youths who violated Montana law. Section 41-5-102, MCA. The instruction had no bearing on the jury's factfinding responsibility to determine whether E.M.R. had violated several discrete criminal statutes. Instead, it improperly informed the jury how E.M.R. would be

10

treated by the State if found to have committed the offenses and, as E.M.R. points out, intimated that E.M.R. would not receive potentially-beneficial state services if the jury found she had not committed the offenses. The instruction therefore invited the jurors "to ponder matters that [were] not within their province, distract[ed] them from their factfinding responsibilities, and create[d] a strong possibility of confusion." *Shannon*, 512 U.S. at 579, 114 S. Ct. at 2424. Although the State argues that the Youth Court did not commit error because it did not provide specific instructions as to how E.M.R. would be treated if she were found guilty, this argument misses the point. Information regarding the consequences of a verdict is irrelevant to the jury's factfinding task. *Shannon*, 512 U.S. at 579, 114 S. Ct. at 2424.

¶26 To constitute reversible error, jury instructions regarding the consequences of a verdict "must prejudicially affect the defendant's substantial rights." *Christiansen*, ¶ 7. E.M.R. had a fundamental constitutional right to a fair trial by jury as guaranteed by Article II, Section 26 of the Montana Constitution. Just prior to receiving the instruction on the purpose of the Youth Court Act, the jury was unable to reach a verdict regarding the animal cruelty charges. After receiving the erroneous instruction, the jury convicted E.M.R. of one count of aggravated animal cruelty, a felony, in violation of § 45-8-217(2), MCA. Given these circumstances, we cannot say that E.M.R.'s substantial rights were not prejudiced. Particularly given its timing, the erroneous instruction introduced the positive impact a guilty verdict could have on E.M.R., distracting the deadlocked jurors from weighing only the elements of the criminal charges. The Youth Court's instruction

11

on the legislative purpose of the Youth Court Act was prejudicial error and requires reversal of the aggravated animal cruelty adjudication, Count IX of the second amended petition. Since the jury already had reached its verdict on the misdemeanor counts before the challenged instruction was given, the adjudications for those offenses will not be disturbed.

¶27    *2. Did the Youth Court err by denying E.M.R.'s motion to dismiss the five "dog at large" offenses based on an erroneous statutory reference in the amended charging documents?*

¶28    E.M.R. contends that "the youth court erred in failing to dismiss Counts I-V of the Second Amended Petition," which erroneously charged E.M.R. with violating § 4-2006-13, MCA, instead of charging her with violating Lewis and Clark County Ordinance § 4-2006-13. E.M.R. alleges that the State could have amended the petition pursuant to § 46-11-205(3), MCA, and that its failure to do so failed to satisfy the requirements of a petition filed under the Youth Court Act mandated by § 41-5-1402, MCA.

¶29    The State responds by asserting that the Youth Court "correctly denied E.M.R.'s motion to dismiss the dog at large charges because she was adequately apprised of the charges against her and was not surprised by them" and notes that "the affidavit in support of the Amended Petition contained the correct citation." We agree with the State that the Youth Court's refusal to dismiss the dog at large charges was correct.

¶30    E.M.R. was charged by petition, which, like an information in a criminal case, consists of "a written accusation of criminal conduct prepared by a prosecutor in the

12

name of the State." *State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, 172 P.3d 1264. An information "must reasonably apprise the accused of the charges against him, so that he may have the opportunity to prepare and present his defense." *Wilson*, ¶ 25. E.M.R. correctly notes that the petitions charged her with violating a statute in the Montana Code Annotated that did not exist. In criminal cases, "[w]e read the information, *and the affidavit in support thereof*, as a whole to determine the sufficiency of the charging documents." *Wilson*, ¶ 25 (emphasis added). We apply the same standard here. In the affidavit filed in support of the State's first amended petition, the State correctly cited to Lewis and Clark County Ordinance § 4-2006-13.

¶31 Even though the State erroneously charged E.M.R. pursuant to a nonexistent statute in the Montana Code Annotated, E.M.R. does not show any surprise or prejudice to her defense. "Even if there [is] error in the charging documents, there is no ground for reversal unless [the defendant] demonstrates that she was prejudiced." *State v. Bahr*, 2009 MT 378, ¶ 11, 353 Mont. 294, 224 P.3d 610 (citing § 46-20-701, MCA). We apply the "common understanding rule" to determine whether "the charging language of a document allows a person to understand the charges against him." *Bahr*, ¶ 8 (quoting *Wilson*, ¶ 25). The affidavit filed in support of the amended petition cited to the correct statute. A petition "that contains an erroneous name of the offense or an erroneous statutory reference is not necessarily invalid as long as the charging language passes the 'common understanding' rule." *Bahr*, ¶ 9 (citing *State v. Brogan*, 261 Mont. 79, 86, 862 P.2d 19, 23 (1993)). Read together, the petition and affidavit were sufficient to apprise

E.M.R. of the charges against her and to prevent any surprise. *See Bahr*, ¶ 11. The Youth Court correctly declined to dismiss the "dog at large" charges.

¶32    For the foregoing reasons, we affirm in part, reverse in part and remand for a new trial on Count IX of the second amended petition.


                                            /S/ Beth Baker


We concur:

/S/ Mike McGrath
/S/ Jim Rice
/S/ Patricia O. Cotter
/S/ Brian Morris