FILED

February 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0572

DA 13-0572

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 39

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

BRANDON THOMAS BETTERMAN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                    In and For the County of Butte/Silver Bow, Cause No. DC 12-45
                    Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender, David G. Dennis,
                Assistant Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
                Assistant Attorney General, Helena, Montana

                Eileen Joyce, Silver Bow County Attorney, Samm Cox, Deputy
                County Attorney, Butte, Montana

                            Submitted on Briefs:  December 17, 2014
                                      Decided:  February 10, 2015

Filed:

                                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Appellant Brandon Thomas Betterman appeals the judgment of conviction and sentence for the offense of bail jumping, arguing that a 14-month delay between entry of his guilty plea and sentencing was a violation of his right to a speedy trial. The District Court denied his motion to dismiss for lack of speedy trial. We affirm, but upon a basis different from that reached by the District Court.

¶2     We restate the issue as follows:

*Was Betterman denied due process of law by virtue of the delay occurring between his conviction and sentencing?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     Pursuant to charges of felony partner or family member assault, Betterman was ordered to appear in court on December 8, 2011. Betterman failed to appear on December 8, 2011, and again on December 9, 2011, after the court continued the matter for a day. A warrant was issued for Betterman's arrest.

¶4     On February 9, 2012, Betterman turned himself in to the Butte-Silver Bow Detention Center. He wrote a letter to the District Court dated February 27, 2012, admitting that he knew he was due in court on December 8, 2011, but that he had neither transportation nor money to travel from Billings. Betterman was charged with bail jumping on March 5, 2012.

¶5     Betterman was sentenced for the underlying partner or family member assault conviction on March 15, 2012. He was given five years to the Department of Corrections (DOC), with two years suspended, and credit for time served. Betterman was remanded

2

to the Butte-Silver Bow Detention Center pending his arraignment on the bail jumping charges.

¶6 At his arraignment on April 19, 2012, for the bail jumping charges, Betterman pleaded guilty. The State also filed its notice that it intended to designate Betterman as a persistent felony offender. Betterman objected to the State's notice on April 27, 2012, and the District Court held a hearing on June 28, 2012. At the conclusion of the hearing, the court took the matter under advisement and remanded Betterman to Butte-Silver Bow Detention Center to await sentencing on his bail jumping conviction. On November 27, 2012, the District Court issued its order denying Betterman's objection to the State's PFO notice finding that Betterman was not prejudiced by the State's filing of the notice.

¶7 Following Betterman's plea of guilty on April 19, 2012, the District Court ordered an updated PSI on May 3, 2012. In its order, the District Court advised that a sentencing hearing would be scheduled upon receipt of the PSI. Nearly five months later, on October 10, 2012, the updated PSI was completed. Two months later, on December 28, 2012, the District Court scheduled a sentencing for January 17, 2013. On January 17, 2013, the day of sentencing, Betterman filed a motion to dismiss alleging he was denied a speedy trial because of the delay in his sentencing. The State requested time to respond, and filed its response on January 29, 2013. A hearing was never held and the District Court issued a written order on April 29, 2013, denying Betterman's motion pursuant to an *Ariegwe* analysis. *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815.

¶8 Meanwhile, apparently concerned about the delay in scheduling a sentence, the State and Betterman notified the District Court in March of 2013 that they wanted a

sentencing hearing scheduled. They were told by the District Court's Judicial Assistant that there were several civil orders that were pending and that the court would not be able to "fast track" the sentencing.

¶9 On May 6, 2013,[1] Betterman filed an Affidavit with the court setting forth the following: that he had spent at least 442 days at Butte-Silver Bow Detention Center for the partner or family member assault and would otherwise be eligible for conditional release if he had actually been an inmate with the DOC; that a warrant was issued in another county because he was not able to complete portions of that sentence due to his confinement on the bail jumping; that, while he completed Anger Management in the Butte-Silver Bow Detention Center, he was unable to complete Cognitive Principles and Restructuring (CPR), or obtain chemical dependency counseling and a mental health assessment as required by the sentence imposed for the partner or family member assault; that he desires a hearing on his motion to dismiss and, in any event, at least a sentencing; that he is unemployed and cannot continue any schooling; that he has anxiety and depression as a result of the delay; and that he has not received medical attention for high blood pressure, stomach, and back problems.

¶10 The matter was finally scheduled for sentencing on June 27, 2013. For the offense of bail jumping, Betterman received a sentence of seven years to the Montana State Prison, with four years suspended. The sentence was ordered consecutive to his five year sentence for partner or family member assault.

---

[1] Given the date stamp of Betterman's affidavit, it does not appear the District Court had the opportunity to consider it prior to issuing its order denying Betterman's motion to dismiss.

4

**STANDARDS OF REVIEW**

¶11 The denial of a motion to dismiss in a criminal case presents a question of law, which this Court reviews de novo. *State v. Nickerson*, 2014 MT 83, ¶ 6, 374 Mont. 354, 322 P.3d 421. A trial court's interpretation and application of the law or constitution are reviewed de novo to determine if the conclusions are correct. *Ariegwe*, ¶ 119. Underlying findings of fact are reviewed under the clearly erroneous standard. *Nickerson*, ¶ 6. The court's findings of fact are clearly erroneous if not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119. The Court will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason. *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646.

**DISCUSSION**

¶12 *Was Betterman denied due process of law by virtue of the delay occurring between his conviction and sentencing?*

¶13 This appeal requires us to address the nature of a defendant's right to be sentenced in a timely fashion. Betterman, relying on *State v. Mooney*, 2006 MT 121, 332 Mont. 249, 137 P.3d 532, *overruled in part by Ariegwe*, ¶ 102 n. 9, and *Ariegwe*, argues that he has a speedy trial right, deriving from the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution, which includes the period from the date of his guilty plea until the date of his sentencing. Betterman maintains that the District Court incorrectly determined that his guilty plea waived any constitutional claims arising thereafter, and argues that he waived only the right to raise

constitutional claims "which may have occurred prior to the plea." *State v. Pavey*, 2010 MT 104, ¶ 11, 356 Mont. 248, 231 P.3d 1104. Betterman evaluates his sentencing delay by applying the speedy trial analysis we stated in *Ariegwe*.

¶14 The State contends that Betterman waived his right to argue a speedy trial violation when he pleaded guilty. The State reasons that because there is no further right to a trial after a guilty plea, there is similarly no further right to the constitutional protections associated with a trial. The State argues that the speedy trial right ends upon a finding of guilt by verdict or plea, which is the date of "disposition" for purposes of a speedy trial claim. The State argues that if this Court considers the merits of Betterman's sentencing delay, we should apply due process considerations of the Fourteenth Amendment of the United States Constitution and Article II, Section 17, of the Montana Constitution, and not the "ill-fitting" *Ariegwe* analysis.

¶15 The State maintains that the due process analysis it urges is consistent with the multiple statutory provisions requiring sentencing to take place without unreasonable delay. However, the State points out that Betterman has waived review under these more appropriate bases because he has not made a statutory claim and has asserted a constitutional speedy trial violation rather than a due process violation. Regardless of the analytical approach employed, the State urges us to find that the delay was reasonable because each instance of delay was associated with motions filed by Betterman.

¶16 Upon our review of the record, we agree that Betterman has failed to articulate in either the District Court or this Court any statutory claim of sentencing delay. We will not consider an issue raised for the first time on appeal or a party's change in legal

6

theory. *State v. Dewitz*, 2009 MT 202, ¶ 30, 351 Mont. 182, 212 P.3d 1040. We therefore consider only Betterman's constitutional claim of sentencing delay.

¶17 In our single decision addressing whether the right to a speedy trial includes sentencing, we determined that sentencing was part of trial for purposes of the Sixth Amendment and "conclusively [held] that the right to speedy trial applies through sentencing." *Mooney*, ¶ 15. We arrived at this conclusion, however, without analysis or explanation and in apparent reliance on *Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 486 (1957). In *Pollard*, the Supreme Court stated that it would "assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment." 352 U.S. at 361, 77 S. Ct. at 486. Applying both the Sixth Amendment and Fed. R. Crim. P. 32(a) (1946), it then denied the speedy sentencing claim on the merits, finding that the delay was not "purposeful or oppressive" and the sentencing delay was promptly remedied when discovered. *Pollard*, 352 U.S. at 362, 77 S. Ct. at 486. Although we similarly denied Mooney's speedy trial claim on the merits, *Mooney*, ¶¶ 16-17 we went further than the assumption "*arguendo*" in *Pollard* and actually held that the right to speedy trial applies to sentencing.[2] Given our reliance upon *Pollard* to extend the constitutional speedy trial right to include sentencing when *Pollard* refrained from

_____

[2] Many courts have adopted the same approach as *Pollard* to evaluating the question—that is, assuming the right exists through sentencing and then denying the claim on the merits. *See United States v. Gibson*, 353 F.3d 21, 27 (D.C. Cir. 2003) ("Assuming . . . without deciding that the guarantee of a 'speedy and public trial' also provides a defendant a right to be promptly sentenced, we hold that [the defendant] has failed to make the showing under *Barker* necessary to obtain relief."); *United States v. Yelverton*, 197 F.3d 531, 535 (D.C. Cir. 1999) ("Neither the Supreme Court nor this court has held that the Sixth Amendment right to a speedy trial reaches sentencing, but in [*Pollard*], the Supreme Court assumed that it did."); *United States v. Martinez*, 837 F.2d 861, 866 (9th Cir. 1988) ("This court has treated the imposition of sentence as within the speedy trial guarantee, but has refrained from explicitly recognizing it as such.").

recognizing it as such, we deem it appropriate to reexamine the nature of a claim of sentencing delay.

¶18    We begin by observing the distinction between trial, to which a constitutional speedy trial right clearly attaches, and sentencing.  In *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 2356 (2000), the Supreme Court retraced the Sixth Amendment jury trial right and the principle that an accused is entitled to have each of the facts substantiating an element of the crime tried before a jury.  In so doing, it examined the relationship between a trial by jury and judgment by court as it existed during the years surrounding our nation's founding.  "'After trial and conviction are past,' the defendant is submitted to 'judgment' by the court—the stage approximating in modern times the imposition of sentence."  *Apprendi*, 530 U.S. at 478 n. 4, 120 S. Ct. at 2356 n. 4 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 368 (1769)).  The *Apprendi* Court explained that "trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve [of the defendant's] equals and neighbours . . . .'"  *Apprendi*, 530 U.S. at 477, 120 S. Ct. at 2356 (quoting Blackstone, *supra*, at 343).  Sentencing, however, followed the verdict, and "'there may be no doubt as to the judgment which should be given, if the defendant be convicted.'"  *Apprendi*, 530 U.S. at 478, 120 S. Ct. at 2356 (quoting J. Archbold, *Pleading and Evidence in Criminal Cases* 44 (15th ed. 1862)).[3]  The distinction is again explained by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 308-09, 124 S.

---

[3]    The substantive criminal law during this time period tended to be sanction-specific, thus prescribing a specific sentence of each offense with little discretion left to the judge in imposing a sentence.  *Apprendi*, 530 U.S. at 479, 120 S. Ct. at 2357.

8

Ct. 2531, 2540 (2004): The "jury's traditional function of finding the facts essential to lawful imposition of the penalty" derives from the Sixth Amendment, which "by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury." Consistent with these principles separating the trial establishing guilt from the imposition of penalty, many jurisdictions prohibit a jury from knowing the penalty a criminal defendant may face in the event of a guilty finding.[4]

¶19 These distinctions drawn by the Supreme Court are mirrored in Montana's statutory scheme which separates the trial phase of a criminal prosecution from the penalty or sentencing phase. "All prosecutions deciding issues of *fact* must be *tried* by the court and jury . . ." and "[a]ll *sentences* . . . shall be imposed exclusively by the *judge* of the court." Sections 46-16-103, 46-18-103, MCA, (emphases added). Indeed, "sentence" is defined in our Code as "the judicial disposition of a criminal proceeding upon a plea of guilty or nolo contendere or upon a verdict or finding of guilty." Section 46-1-202(25), MCA. Finally, *Black's Law Dictionary* defines "trial" as the "formal judicial examination of evidence and determination of legal claims in an *adversary* proceeding"; while a sentence is the "judgment that a court formally pronounces *after* finding a criminal defendant guilty . . . ." *Black's Law Dictionary* 1569, 1735 (Bryan A. Garner ed., 10th ed. 2014) (emphases added).

---

[4] *See State v. E.M.R.*, 2013 MT 3, ¶ 24, 368 Mont. 179, 292 P.3d 451 ("'providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.'") (quoting *Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424 (1994)); *State v. Zuidema*, 157 Mont. 367, 373, 485 P.2d 952, 955 (1971) ("punishment is not of [the jury's] concern."); 3 Charles Alan Wright & Sarah N. Welling, *Federal Practice and Procedure* § 521, 77 (4th ed. 2011).

¶20 These distinctions are important because the constitutional provisions themselves expressly identify the protections due in the context of a "*trial*." "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI. Similarly, in Montana: "In all criminal prosecutions the accused shall have the right to . . . a speedy public trial by an impartial jury . . . ." Mont. Const., art. II, § 24. Hence, the historical meaning of the word "trial" is significant in ascertaining whether "trial," as it is used within the Speedy Trial Clause, includes sentencing.

¶21 The Supreme Court, as well as this Court in *Ariegwe*, has made clear the interests the constitutional speedy trial right is designed to protect. In *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463, (1971), the Supreme Court explained:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

In *Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2193 (1972), the Court continued to define "prejudice" to the defendant and explained that prejudice should be evaluated in relation to the interests the Speedy Trial Clause is designed to protect:

> This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Where the Sixth Amendment is inapplicable, such as when charges are dismissed or disposed of, the Supreme Court has observed that the "interest is protected primarily by the Due Process Clause . . . ." *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982).

¶22    When considering the interests protected by the constitutional speedy trial right, it is manifest that the interests are different from those of a convicted defendant in being sentenced without delay.  Primarily, an accused's defense cannot be impaired once he has been convicted.[5]   The passage of time that may impair a defense, such as loss of exculpatory evidence or death of a material witness, does not undermine a criminal defendant's ability to argue leniency at sentencing.  *See United States v. Sanders*, 452 F.3d 572, 580 (6th Cir. 2006) ("[W]hen all that remains of a case is the imposition of a sentence, the danger of losing witnesses or other evidence needed to mount an adequate defense is minimized, if not eliminated completely.").   Further, one who has been convicted of a crime does not share the same anxiety and concern as one accused of a crime.  The anxiety and concern of one who has been accused arises from the cloud of suspicion cast over a person who is presumptively innocent. *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S. Ct. 988, 993 (1967).  When the defendant is convicted, his presumption of innocence no longer exists.  While he may still be under a cloud, it is not a cloud of "public accusation," *Klopfer*, 386 U.S. at 222, 87 S. Ct. at 993, but a cloud of public guilt generated by a finding beyond a reasonable doubt that he did commit the

---

[5]   Of course, no appeal would lie until final judgment, attained upon imposition of sentence.  Here, a claim of impairment through delay of an appeal has not been advanced and we will not speculate as to that analysis or outcome.

alleged crimes, *Erbe v. State*, 336 A.2d 129, 136 (Md. Ct. Spec. App. 1975). Finally, there is no risk of oppressive pre-trial incarceration once a defendant is convicted of an offense. When a defendant is detained prior to conviction, he remains cloaked with the presumption of innocence. Our concern is that a person presumed innocent is nevertheless deprived of his liberty. However, a guilty plea, guilty verdict, or findings made by the court extinguishes this concern and we no longer are considering an accused, but someone who has been convicted of a crime.

¶23 A delayed sentencing raises different concerns than those raised by a delay in proceeding to trial. A delay in sentencing "may leave the defendant, as well as the victim, in limbo concerning the consequences of conviction. It postpones the commitment of the defendant to corrections facilities, may have a detrimental effect on rehabilitation, and suspends the appellate review of error." Wright & Welling, *supra*, § 524 at 91. We believe these concerns are compelling, but nevertheless ill-suited for remediation through the constitutional right to speedy trial. We realize that a criminal prosecution encompasses sentencing and that the prosecution does not terminate until sentence is imposed. However, this proposition has no bearing on when a trial terminates. "Trial" is not synonymous with "prosecution." A prosecution is made up of many phases: investigation, pre-trial (arraignment, motions), adjudication, and post-trial (sentencing). *See United States v. Ray*, 578 F.3d 184, 198 (2d Cir. 2009).

¶24 Significantly, if we were to extend the constitutional right to speedy trial to include sentencing, there would be the question of what remedy to impose when the delay occurred subsequent to conviction. The only remedy available for a constitutional

12

speedy trial violation is the dismissal of the charges. The Supreme Court made clear in *Strunk v. United States*, 412 U.S. 434, 440, 93 S. Ct. 2260, 2263 (1973), that "dismissal [is] the only possible remedy" for a violation of the right protected by the Speedy Trial Clause. Although recognizing this remedy was "unsatisfactorily severe," the Court found it necessary because of the irreparable harm caused by violation of the right. *Strunk*, 412 U.S. at 439-40, 93 S. Ct. at 2263. This contrasts with the remedy for a sentencing error, which rejects the doctrine that a prisoner "'whose guilt has been established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing sentence.'" *Bozza v. United States*, 330 U.S. 160, 166-67, 67 S. Ct. 645, 649 (1947) (quoting *In re Bonner*, 151 U.S. 2472, 260, 14 S. Ct. 323, 327 (1894)). "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza*, 330 U.S. at 166, 67 S. Ct. at 649. If the constitutional speedy trial right extends through sentencing, then these two remedial doctrines conflict. To construe them consistently, we must find that the constitutional speedy trial right does not include sentencing and that therefore a delay in sentencing does not warrant dismissal of the charges. *See Ray*, 578 F.3d at 193-94.

¶25 Based on the foregoing, we conclude that, just as the right to speedy trial does not attach until a criminal proceeding has been initiated, *United States v. Lovasco*, 431 U.S. 783, 788, 97 S. Ct. 2044, 2048 (1977), or after charges have been dismissed, *MacDonald*, 456 U.S. at 10, 102 S. Ct. at 1503, so too does it cease to apply when the conviction becomes definitive. We determine that the major concerns of the speedy trial right guaranteed by the Sixth Amendment to the United States Constitution and Article II,

13

Section 24, of the Montana Constitution do not apply after conviction. Furthermore, to the extent that *Mooney* holds that a constitutional speedy trial right applies through sentencing, it is overruled. Any prejudice suffered by a criminal defendant as a result of an unreasonable delay in sentencing must find its remedy in an alternative constitutional or statutory provision.

¶26 Because we find the Sixth Amendment inapplicable, Betterman's interest in being sentenced without unreasonable delay is "protected primarily by the Due Process Clause . . . ." *MacDonald*, 456 U.S. at 8, 102 S. Ct. at 1502. Although the State argues Betterman did not raise issues of constitutional due process in the District Court, and thus has waived consideration of those issues on appeal, we will not fault Betterman for his reliance on *Mooney*, which established, although we determine today incorrectly, that the Sixth Amendment right to a speedy trial continues through to sentencing. Thus, we will consider Betterman's constitutional claim pursuant to a due process analysis.

¶27 Due process of law requires that "[n]o person shall be deprived of life, liberty, or property without due process of law." Mont. Const. art. II, § 17; *see also* U.S. Const. amend. XIV. This Court has held that a criminal defendant's sentence must comport with the due process guarantees of these constitutional provisions. *State v. Haldane*, 2013 MT 32, ¶ 40, 368 Mont. 396, 300 P.3d 657. The Due Process Clause protects defendants against fundamentally unfair treatment by the government in criminal proceedings. The Supreme Court, moreover, has recognized that the Due Process Clause has "a limited role to play in protecting against oppressive delay." *Lovasco*, 431 U.S. at 789, 97 S. Ct. at

14

2048. A delay in sentencing that violates these fundamental guarantees can, depending on the circumstances, constitute a violation of the Due Process Clause.

¶28 Reasonable timeliness of sentencing is a due process guarantee expressed by the Montana Legislature in several statutory provisions. Section 46-18-101(3)(a), MCA, provides: "Sentencing and punishment *must* be certain, *timely*, consistent, and understandable." (Emphasis added.) Section 46-18-102(3)(a), MCA, provides: "if the verdict or finding is guilty, sentence must be pronounced and judgment rendered within a *reasonable* time." (Emphasis added.) Section 46-18-115, MCA, provides: "the court shall conduct a sentencing hearing *without unreasonable delay* . . . ." The 1991 Commission Comments clarify that this statute "mainly embodies due process constitutional law that has been developed in federal courts and the Montana Supreme Court." 2014 Annotations to the MCA, vol. 10 at 842. We find that these prohibitions, taken together with the protection against unfair treatment in criminal proceedings guaranteed by the Due Process Clause, protects a criminal defendant from unreasonable delay between conviction and sentencing.[6]

¶29 Whether there has been unreasonable sentencing delay "depends upon the circumstances" of each case. *Pollard*, 352 U.S. at 361, 77 S. Ct. at 486. However, in order to determine whether a defendant has been deprived of his constitutional right of due process through a delayed sentencing, courts generally consider (1) the reasons for the delay and (2) the prejudice to the defendant. *Lovasco*, 431 U.S. at 790, 97 S. Ct. 2049; *see also Sanders*, 452 F.3d at 580 ("Though the *Lovasco* line of cases addresses

---

[6] As we previously observed, Betterman has failed to raise a statutory claim under code provisions mandating that a defendant be sentenced in a "timely" manner, without "unreasonable delay."

15

pretrial delays, we find it equally applicable to [delays in resentencing].  As in the time period before the *Sixth Amendment* right to a speedy trial attaches, the primary concern after the right ceases to apply is 'oppressive delay.'").  Under this test, "prejudice is . . . necessary but not sufficient" to prove a due process violation.  *Lovasco*, 431 U.S. at 790, 97 S. Ct. at 2049.  "[T]he due process inquiry must consider the reasons for delay as well as the prejudice to the accused."  *Lovasco*, 431 U.S. at 790, 97 S. Ct. 2049; *see also United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) ("We have interpreted . . . *Lovasco* to hold that both conditions (improper reasons for delay and prejudice) are necessary for a due[ ]process violation.").

¶30    We believe, as we similarly found in *Ariegwe*, ¶¶ 101-02, that these considerations are not independent and should not be evaluated in isolation from each other.  Rather, they are related factors to be weighed in light of each other and the surrounding circumstances.  *See also Ray*, 578 F.3d at 199-200; *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986) (when considering sentencing delay, the pertinent "factors are to be balanced in light of the facts and circumstances of the case"); *cf. Barker*, 407 U.S. at 533, 92 S. Ct. 2193 (the factors relevant to a "finding of a deprivation of the right of speedy trial . . . are related factors and must be considered together with such other circumstances as may be relevant"); *United States v. L'Allier*, 838 F.2d 234, 238 (7th Cir. 1988) ("A court must . . . weigh the actual prejudice to the defendant against the reasons for the delay to determine whether a particular indictment must be dismissed pursuant to the due process clause. Thus, even if [the defendant] can show actual and substantial prejudice to his defense as a result of the sixteen month pre-indictment delay, the

16

indictment will not be dismissed if there was a legitimate reason for the delay." (citation omitted)).

¶31    Our analysis of the reasons for the delay is informed by *Pollard*, which, in addition to assuming "*arguendo*" that a Sixth Amendment speedy trial right applied through sentencing, analyzed the provisions of Fed. R. Crim. P. 32(a) requiring imposition of sentence "without unreasonable delay." 352 U.S. at 361, 77 S. Ct. at 486. There, the Supreme Court declared that the "delay must not be purposeful or oppressive." *Pollard*, 352 U.S. at 361, 77 S. Ct. at 486. Subsequently, in *Barker*, those implied inquiries were amplified and articulated in the context of pre-trial delay. For example, the delay must not be deliberate or calculated to hamper the defense, gain a tactical advantage, or to harass the defendant. Such delay will be weighed heavily against the State; while more neutral reasons, such as negligence and overcrowded courts, weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the State. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *see also Ariegwe*, ¶ 67. We observed in *State v. Good*, 2002 MT 59, ¶ 26, 309 Mont. 113, 43 P.3d 948, that the accused "cannot be held responsible for the court's policy regarding the setting of trial dates and its management of its criminal caseload." In *State v. Kipp*, 1999 MT 197, ¶ 14, 295 Mont. 399, 984 P.2d 733, we held that "[w]hen a trial court, for its own reasons, vacates the trial date and does not set a new date, this delay is not attributable to the defendant." Official negligence in bringing the defendant to trial occupies a middle ground between diligent prosecution and delay caused by bad faith. *Ariegwe*, ¶ 69. We have said that negligence in bringing the accused to trial is

unacceptable delay. Finally, we must be mindful that in assessing the reasons for delay it is not the defendant's duty, or that of his attorney, to see that he is speedily prosecuted and sentenced. *Barker*, 407 U.S. at 527, 92 S. Ct. at 2190; *Ray*, 578 F.3d at 200.

¶32 Although we reject substantively the assumption in *Pollard* that the Speedy Trial Clause applies through sentencing, we find its analysis of sentencing delay instructive. Pursuant to *Pollard*, if a sentencing delay is purposeful and oppressive, then we must determine that there has been a constitutional due process violation. The determination of whether a delay is oppressive incorporates considerations of whether the defendant has suffered prejudice and the degree and nature of that prejudice. Neither factor is to be considered dispositive. Though the reasons for a delay may be less than purposeful, or the prejudice caused by the delay less than oppressive, there may still be a constitutional violation when these two considerations are balanced against one another. Each case requires an independent analysis with consideration of all the circumstances.

¶33 Betterman was convicted on April 19, 2012, when he pleaded guilty. He was not sentenced until fourteen months later, on June 27, 2013. During that time frame, he filed two motions: one objecting to the State's notice of PFO filed at the time he pleaded guilty, and a motion to dismiss for his sentencing delay. The time taken by the State in responding to these motions amounted to only a few months. The rest of the delay is attributable to obtaining the PSI and the District Court's delay in ruling on the motions and in scheduling the sentencing. Here, most of the delay must be considered institutional, since it is neither a deliberate attempt by the State to delay for purposes of hampering the defense, nor can the delay be overlooked. We note that both motions filed

18

by the defense raised legitimate issues, especially the motion requesting dismissal for reasons of delay. The State does not allege that Betterman acted deliberately to delay his sentencing or that he made excessive or frivolous filings. Moreover, Betterman's actions in filing his two motions did not contribute greatly to the delay. Preparation of the PSI and the District Court's scheduling of a sentencing hearing took an inordinate amount of time, and these factors must be attributed to the State. In short, there was unacceptable delay when it took fourteen months following conviction to sentence Betterman. While not purposeful, no legitimate reason has been set forth for such a delay. We further note that, pursuant to § 46-16-101, MCA, "Prosecutions against defendants held in custody must be disposed of in advance of prosecutions against defendants on bail unless for good cause the court shall direct an action to be tried out of its order." We find no fault in Betterman for this delay, especially in light of his requests to be sentenced.

¶34 In addressing prejudice to the criminal defendant through sentencing delay, we are compelled to first observe that a delay in sentencing frustrates the goals articulated by the Montana Legislature in its sPentencing policy for the State. *See* § 46-18-101, MCA (sentencing policy is to "encourage and provide opportunities for the offender's self-improvement to provide rehabilitation and reintegration of offenders back into the community"; to achieve this policy, sentencing is to be "certain, timely, consistent, and understandable."). Sentencing delay "disserves a basic notion that, once convicted, an offender should be able to serve his sentence and be done with it." *United States v. Howard*, 577 F.2d 269, 270 (5th Cir. 1978). A delay in sentencing or in the execution of a sentence interrupts the defendant's reintegration into the community and thus frustrates

19

effective rehabilitation. Programs designed to facilitate reentry into the community may be less accessible or delayed. These are compelling reasons to require that sentencing be conducted promptly and without unreasonable delay.

¶35 With these observations in mind, we proceed to evaluate Betterman's constitutional claim of prejudice in the context of his status as a convicted felon, as we are required to do, noting that as the rights of society proportionately increase, the claims of prejudice must be substantial and demonstrable. *Ray*, 578 F.3d at 201; *Perez*, 793 F.2d at 256; *State v. Todisco*, 6 P.3d 1032, 1040 (N.M. Ct. App. 2000). Most of Betterman's claims of prejudice are speculative, concerning anticipated benefits or participation in various DOC programs, anticipated dates for conditional discharge, and anticipated enrollment in rehabilitation services. It appears as well that Betterman may have had a DUI matter in another county to attend to before acquiring "inmate" status and access to these benefits. There must be some showing of a causal relationship between the delay and the prejudice claimed. *Brooks v. United States*, 423 F.2d 1149, 1153 (8th Cir. 1970). Furthermore, post-conviction, pre-sentence anxiety is briefly alluded to by Betterman; the anxiety of an accused is not to be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and only waiting to learn how long that sentence will be.

¶36 On this record, we conclude that any prejudice to Betterman from a delayed sentencing was not substantial and demonstrable. In balancing the reasons for the delay together with the prejudice inuring to Betterman, we find that the delay was not purposeful or oppressive, but instead constituted institutional delay, which is nevertheless

20

unacceptable. However, in light of the prejudice to Betterman, which was neither substantial nor demonstrable, we conclude that the unacceptable delay does not warrant finding a constitutional due process violation. We make no determination regarding whether Betterman was denied a timely sentence pursuant to Montana's statutory provisions, as he has not raised the issue.

## CONCLUSION

¶37 We conclude that the constitutional right to speedy trial does not extend from conviction to sentencing. However, a criminal defendant has a constitutional due process right to have sentence imposed in a timely manner, without unreasonable delay, embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution. A criminal defendant in Montana also has a statutory right to be sentenced promptly pursuant to §§ 46-18-101(3)(a), -102(3)(a), and -115, MCA. Because Betterman has failed to assert a statutory claim, we consider only his constitutional violation and make no determination regarding whether the same analysis would apply to review of a statutory claim of error. Although we find that the delay in Betterman's sentencing was unacceptable, we find that Betterman's prejudice from the delay was speculative and not substantial and demonstrable.

¶38 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH

21

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE