FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0866

DA 13-0866

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 178

IN THE MATTER OF:

A.D.T.,

      A Youth.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DJ 11-16
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Ashley A. Harada, Harada Law Firm, PLLC, Billings, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

          Steven N. Eschenbacher, Lake County Attorney, Ann C. Harrie, Deputy County Attorney, Polson, Montana

Submitted on Briefs:  April 29, 2015
Decided:  June 30, 2015

Filed:

                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Following a youth court disposition, A.D.T. was transferred to district court pursuant to § 41-5-208, MCA, for supervision by the Department of Corrections (DOC) when he reached his 18th birthday.  A.D.T. challenges the denial of his motion to dismiss a petition revoking his probation and asserts that the conditions of probation he is alleged to have violated were improperly imposed.  We affirm the District Court because it ultimately reached the correct result, even though it was for the wrong reason.  *State v. Betterman*, 2015 MT 39, ¶ 11, 378 Mont. 182, 342 P.3d 971.

¶2     We restate the issues as follows:

   1.  *Did the District Court violate the provisions of § 41-5-208(4), MCA, by imposing new conditions of probation prior to finding that A.D.T. violated the terms of his youth court disposition?*

   2.  *Did the District Court correctly determine that there were conditions of the underlying youth court disposition which were violated?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On February 16, 2012, A.D.T. was adjudicated as a delinquent youth and juvenile offender based upon his admission to one count of sexual assault and one count of sexual intercourse without consent.  It was undisputed that A.D.T. needed an inpatient sex offender treatment program and that the most suitable facility was the Pine Hills Juvenile Correctional Facility (Pine Hills).  However, because A.D.T. was ten months shy of his 18th birthday, Youth Court Services was concerned that A.D.T. would not be able to complete the sex offender program at Pine Hills, recommended by psychologist Dr. Robert Page, because the program normally required between 17 and 24 months to

2

complete. As a result, the youth court ordered that a status hearing be set for December 13, 2012, "for additional information and insight regarding an appropriate disposition for the Youth that will carry past the Youth's eighteenth birthday." The youth court ordered A.D.T. committed to the Department of Corrections for placement at Pine Hills "in the sex offender treatment program until eighteen (18) or sooner released." The youth court designated A.D.T. a Level II sex offender, but exempted him, at that time, from the duty to register as a sex offender under § 41-5-1513(1)(d), MCA.

¶4 On December 12, 2012, the State filed a Motion to Transfer Jurisdiction to the District Court pursuant to § 41-5-208, MCA. The petition noted that A.D.T. had successfully completed the sex offender program at Pine Hills, but that A.D.T.'s counselors had recommended outpatient treatment to transition A.D.T. into the community. At the hearing held December 13, 2012, A.D.T. and his counsel were present and agreed to a transfer of jurisdiction to the district court. Thereupon, the court signed an order transferring jurisdiction to "ensure compliance with outpatient treatment and given the fact that the Youth will turn 18 years of age . . . ."

¶5 On January 15, 2013, Adult Probation and Parole Officer Amy Rehbein made a request with the deputy county attorney to amend supervision of A.D.T. by adding 41 conditions of probation relating to adult probationers convicted of sexual offenses.[1]

---

[1] The 41 conditions were "standard" sex offender conditions requested by Adult Parole and Probation and included such requirements such as: that the "defendant" obtain a chemical dependency evaluation and follow through with treatment recommendations; complete Cognitive Principles & Restructuring Program; submit to reasonable searches; not associate with other probationers; not frequent places where children congregate; not have any contact with any individual under the age of 18; no internet access; treatment may be required at any time if deemed appropriate by the Parole & Probation Officer and therapist; in addition to numerous other conditions.

3

Officer Rehbein presented a copy of the request to amend to A.D.T. for his signature which identified each additional condition. A.D.T., apparently without consulting his attorney, signed the request. The amendment was requested pursuant to § 46-23-1011(4)(d), MCA, which provides that the "court may grant the petition [to amend conditions] if the probationer does not object." On February 13, 2013, the district court signed an order adding the 41 conditions to A.D.T.'s probation and supervision.

¶6 On March 28, 2013, Officer Rehbein filed a report of violation of A.D.T. with the district court, alleging that A.D.T. violated four of the 41 conditions added to A.D.T.'s probation. Specifically, the report alleged that A.D.T. violated probationary conditions regarding laws and conduct, illegal drug use, and no alcohol. It was alleged A.D.T. attended a party with numerous other juveniles who were smoking marijuana and drinking alcohol, had a blood alcohol concentration (BAC) of .088, and had lied to his probation officer about the events surrounding his use of alcohol and marijuana. The report also alleged that A.D.T. was terminated from his outpatient sex offender treatment because A.D.T. admitted to his counselor that he was drinking alcohol and smoking marijuana, driving while under the influence of alcohol, associating with minors who were also drinking, and had viewed pornography on at least one occasion at his grandmother's house. A.D.T. was additionally noted as having poor performance in group treatment. On April 3, 2013, the State filed a petition to revoke A.D.T.'s probation based on the violations set forth in the report.

¶7 On April 16, 2013, A.D.T. filed a motion to dismiss the State's revocation petition arguing that imposition of the 41 conditions violated the provisions of § 41-5-208(4),

MCA, and exceeded the scope of the youth court's disposition and transfer order of December 13, 2013. A.D.T. argues that DOC supervision is limited to ensuring compliance with the dispositional order and successful completion of outpatient treatment. The State observed that A.D.T. had not objected to the addition of the 41 conditions and that one of the violations–termination from outpatient sex offender treatment–was a violation of A.D.T.'s original youth court disposition. Following a hearing on May 30, 2013, the court denied A.D.T.'s motion to dismiss and determined that A.D.T. had agreed to the addition of the 41 conditions and that he had become a probationer with Adult Probation and Parole upon his transfer to district court. The court set an adjudicatory hearing on the State's revocation petition.

¶8 Dr. Page testified at the revocation hearing held September 19, 2013 and confirmed that A.D.T. had been discharged from outpatient treatment. A.D.T. also admitted to Dr. Page that he had not completed outpatient treatment and that he had been smoking marijuana and drinking alcohol. The court found A.D.T. had violated terms of his probation and placed A.D.T. on "formal probation" with Adult Probation and Parole.

¶9 A.D.T. appeals the denial of his motion to dismiss.

## STANDARD OF REVIEW

¶10 The district court's denial of a motion to dismiss presents a question of law, which this Court reviews de novo. *Betterman*, ¶ 11. We review a district court's interpretation and application of the law de novo to determine if the conclusions are correct. *Betterman*, ¶ 11. The district court's findings of fact are reviewed under the clearly erroneous standard. Additionally, this Court will affirm the district court's ruling when it

5

reaches the right result, even if it reaches the right result for the wrong reason. *Betterman*, ¶ 11.

## DISCUSSION

¶11 *1. Did the District Court violate the provisions of § 41-5-208(4), MCA, by imposing new conditions of probation prior to finding that A.D.T. violated the terms of his youth court disposition?*

¶12 Section 41-5-208, MCA, is Montana's nonextended jurisdiction statute and provides for the transfer of supervisory responsibility to the district court after a youth court disposition made pursuant to the provisions of §§ 41-5-1512 or 41-5-1513, MCA. In any case that was not prosecuted under § 41-5-206, MCA, (setting forth circumstances when an Information may be filed directly in district court) or as an extended jurisdiction juvenile prosecution (pursuant to the provisions of §§ 41-5-1201 through 41-5-1210, MCA), § 41-5-208, MCA, allows the court to transfer jurisdiction to the district court and order supervisory responsibility from juvenile probation services to adult probation services. The purpose of the transfer is to ensure continued compliance with the youth court's disposition.

¶13 Section 41-5-208(4), MCA, provides the specific procedure to be followed when a youth has a case transferred from youth court to district court and has been found to have violated the terms of the youth court's disposition. "If a youth whose case has been transferred to district court under this section *violates a disposition* previously imposed under 41-5-1512 or 41-5-1513, the district court may, *after hearing*, impose conditions as provided under 46-18-201 through 46-18-203." Section 41-5-208(4), MCA. (Emphasis

6

supplied.)  Sections 46-18-201 through 46-18-203, MCA, concern the sentences and conditions that may be imposed for adult offenders convicted of crimes.  It is well established that, following a youth court disposition, a youth is not considered a "defendant" nor has the youth been "convicted" of a crime.  *In re Appeal of Cascade Cnty. Dist. Court*, 2009 MT 355, ¶ 14, 353 Mont. 194, 219 P.3d 1255.  Therefore, absent application of the procedure set forth in § 41-5-208(4), MCA, or some other provision of the law, the probationary conditions and sentences referred to in §§ 46-18-201 through 46-18-203, MCA, may not serve as a basis for imposing specific conditions of a youth's probation which alter the terms of the disposition.

¶14  The plain meaning of the terms of § 41-5-208(4), MCA, require, first, that the youth have been found to have violated the youth court disposition, and, second, that the conditions for adult probation were imposed following a hearing.  We have not previously considered this section.  Likewise, we understand the District Court's inclination that "when you transfer to adult probation and parole you follow the standard conditions of adult probation and parole," particularly since subsection (1) speaks generally of a transfer of supervisory authority to "adult probation services." Nevertheless, the plain language of subsection (4) sets forth the prerequisites for imposition of conditions relating to adult supervision which were not previously contained in a youth's disposition.

¶15  The District Court determined that all of the violations occurred after A.D.T. had been placed on adult probation.  However, this conflates the specific provisions of §§ 41-5-208(1) and (4), MCA.  A transfer under § 41-5-208(1), MCA, as was done here,

7

may be made to "ensure continued compliance with the court's disposition under 41-5-1512 or 41-5-1513." The parties and court do not dispute that the 41 conditions are "new." Therefore, they may not be imposed unless they are consistent with the underlying youth court disposition. Arguably, some of these "new" conditions would have been necessary for continued compliance with the youth court's disposition. However, no hearing was held prior to transfer to establish those conditions necessary to comply with the youth court disposition. Since A.D.T.'s 41 conditions were, in essence, conditions of Adult Probation and Parole embodied by §§ 46-18-201 through 46-18-203, MCA, they may not be imposed absent a hearing and absent a finding that A.D.T. had violated his disposition.[2] We therefore conclude that the District Court erred in denying A.D.T.'s motion to dismiss the petition regarding those conditions which were not originally set forth in the youth court's disposition or transfer order.

¶16   *2. Did the District Court correctly determine that there were conditions of the underlying youth court disposition which were violated?*

¶17   A.D.T. had been declared delinquent as a result of a serious sexual assault and sexual intercourse without consent. Initially, Youth Court Services had recommended that the county attorney proceed pursuant to § 41-5-206, MCA, and file directly in district court by Information. However, upon further reflection, A.D.T. was given the opportunity to complete a sex offender program in a youth facility rather than face criminal charges as an adult and a conviction on his record. It is undeniable that all

---

[2]   We will not address A.D.T.'s argument that the conditions were imposed in violation of his Sixth Amendment right to counsel since we presume that if a hearing were conducted A.D.T. would have been represented by counsel.

8

concerned, especially the court, appreciated the need for successful completion of an inpatient sex offender treatment program. Moreover, as A.D.T.'s therapist testified, outpatient treatment is a standard requirement once a youth is released from the Pine Hills sex offender program. The dispositional order provided specifically for enrollment in the sex offender program at Pine Hills. The order granting transfer to the district court, agreed to by A.D.T., also specifically referenced the need for outpatient treatment in the community as a follow up to A.D.T.'s treatment in an inpatient setting. Thus, successful completion of outpatient sex offender treatment was a requirement to ensure compliance with A.D.T.'s youth court disposition.

¶18 The evidence presented at the revocation hearing held on September 19, 2013, substantiated a finding, by a preponderance of the evidence, that A.D.T. had violated the terms of his youth court disposition when he was terminated from outpatient sex offender treatment. Having found A.D.T. in violation of his disposition, the Court could impose the 17 conditions it imposed following the revocation hearing, which are consistent with conditions set forth in §§ 46-18-201 through 46-18-203, MCA, pertaining to Adult Probation and Parole. Section 41-5-208(4), MCA. A.D.T. violated the court's transfer order and his dispositional order when he was terminated from outpatient sex offender treatment.

## CONCLUSION

¶19 We conclude that, while the district court relied upon the wrong reason to deny A.D.T.'s motion to dismiss the State's revocation petition, it nevertheless reached the correct result in finding A.D.T. had violated the terms of his disposition and imposing

9

conditions pursuant to §§ 46-18-201 through 46-18-203, MCA. *Betterman*, ¶ 11. These conditions were imposed following a hearing and a finding of a violation of the youth court disposition. The requirements of § 41-5-208(4), MCA, therefore, had been met.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA