No. 03-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 80

IN THE MATTER OF N.V.,

A Youth,

      Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DJ 2001-13,
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brock Albin, Albin Law Office, Bozeman, Montana

      For Respondent:

      Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
Attorney General, Helena, Montana

      Marty Lambert, County Attorney; Elizabeth Ridenour, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  December 23, 2003

Decided:  March 30, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     N.V. was adjudicated a delinquent youth before the Eighteenth Judicial District Court, Gallatin County, and placed upon formal probation until his eighteenth birthday. A petition to revoke N.V.'s probation was filed with the Youth Court when the youth was charged with negligent arson and criminal mischief. N.V. admitted to the charges and his probation was subsequently revoked. The court thereafter committed N.V. to the custody of the Department of Corrections until eighteen years of age, and ordered him placed in the sexual offender treatment program at Pine Hills Correctional Facility. The court also extended jurisdiction over N.V. until the age of twenty-five. N.V. appeals from this disposition. We affirm in part, reverse in part, and remand.

¶2     We restate the issues on appeal as follows:

¶3     Did the Youth Court err by considering evidence of the polygraph results?

¶4     Did the Youth Court err by considering the psychological evaluation of Dr. Robert Page?

¶5     Did the Youth Court err by extending jurisdiction over N.V. until his twenty-fifth birthday?

¶6     Did the Youth Court properly deny family counseling and travel expenses for N.V.'s family?

¶7     Did the Youth Court properly deny N.V.'s request for travel expenses for counsel?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8      In July of 2001, N.V., who was twelve years old at the time, was adjudicated a juvenile delinquent after admitting to the offense of sexual intercourse without consent. N.V. was placed upon formal probation until his eighteenth birthday and ordered to undergo sexual offender treatment with Barbara Bottomly (Bottomly), a licensed clinical counselor and member of the Montana Sexual Offender Treatment Association (MSOTA).

¶9      At Bottomly's request, N.V. underwent a series of polygraph examinations in July and November 2002. The examinations revealed that N.V. had been deceptive during his sessions with Bottomly and had not fully disclosed his sexual victims or contacts. Bottomly forwarded the results of the November 2002 polygraph examination to N.V.'s probation officer, Dynise G. Ette (Ette), and recommended that N.V. be placed in a group home.

¶10     On December 27, 2002, the Gallatin County Attorney's Office received Ette's request for revocation of probation. Ette reported that N.V. had been cited with criminal mischief and negligent arson after splattering ink on a bulletin board and setting fire to paper towels in the school restroom. After receiving Ette's report, the State filed a petition to revoke N.V.'s probation. On March 7, 2003, the State amended its petition, adding that N.V. had violated the terms of his probation by failing to fully participate in sexual offender treatment– a fact which came to light after examination of the polygraph results–and had viewed pornography over the internet.

¶11     A hearing on the State's petition was held before the Youth Court on March 18, 2003. N.V. admitted to the offenses of negligent arson and criminal mischief, as well as to viewing

internet pornography in violation of the rules of his probation. However, N.V. denied that he had failed to fully participate in the sex offender treatment program and the State did not pursue adjudication of this charge. At the request of N.V.'s probation officer, the court ordered the youth to undergo a psychological evaluation prior to the disposition hearing, which was scheduled for April 17, 2003.

¶12    On March 27, 2003, in compliance with the court's order, Kristi Rydeen, L.C.P.C. (Rydeen), reported the results of her evaluation and recommended placement of the youth in a group home with continued therapy from a member of MSOTA. In preparing her assessment, Rydeen had consulted with Leigh Schickendantz, L.C.P.C. (Schickendantz), who had also reviewed N.V.'s relevant treatment history and polygraph reports. In light of N.V.'s adjudicated sex offender status and failure to complete outpatient sex offender treatment, Schickendantz recommended that N.V. be immediately returned to the direct supervision of his probation officer and placed in a structured, adequately supervised setting until such time as a viable treatment option could be determined.

¶13    Notwithstanding the previous evaluations by Rydeen and Schickendantz, Ette sought an evaluation from Dr. Robert Page, L.C.P.C. (Dr. Page). Dr. Page had previously evaluated N.V. following the charges of sexual intercourse without consent in 2001, and had likewise received a copy of the polygraph reports. After a complete reassessment of N.V., Dr. Page recommended placement in an inpatient sex offender therapy program until such time as it could be determined that N.V. could safely participate in outpatient therapy. At the disposition hearing, N.V. maintained that Dr. Page's evaluation was obtained without prior

4

notice to defense counsel, without a valid waiver of the youth's constitutional rights, and that the evaluation went beyond that which was authorized by the court's March 18, 2003 order.

¶14 On April 11, 2003, the Youth Placement Committee convened to discuss an appropriate placement for N.V. After considering the polygraph reports, Dr. Page's evaluation, Ette's report and recommendations, as well as information prepared by N.V.'s physician and counselors, the committee recommended N.V. be placed in the inpatient sexual offender treatment program at Pine Hills Youth Correctional Facility until his eighteenth birthday.

¶15 A disposition hearing was held as scheduled on April 17, 2003. Pursuant to defense counsel's objections, the Youth Court found that it had not, and would not, consider the polygraph information. Nevertheless, the court refused to remove the polygraph reports from the official file, or to exclude the evaluation prepared by Dr. Page, who had reviewed the polygraph information.

¶16 After receiving the sworn testimony of the witnesses and recommendations for placement, the court declared N.V. a delinquent youth and committed him to the Department of Corrections until his eighteenth birthday, to be placed at the Pine Hills Correctional Facility for treatment within its sexual offender program, and further, retained jurisdiction over the youth until he reached twenty-five years of age. Counsel for the youth requested provisions be provided to enable N.V.'s parents to visit him at the facility at least once a month, and that N.V. be allowed to have counseling with his family. He additionally asked

5

that he be permitted to visit the youth at the facility at the expense of the public defender system. These requests were denied. From this disposition and order, N.V. appeals.

## STANDARD OF REVIEW

¶17 The standard of review for evidentiary rulings is whether the court abused its discretion. *Samson v. State*, 2003 MT 133, ¶ 17, 316 Mont. 90, ¶ 17, 69 P.3d 1154, ¶ 17. We review a court's conclusions of law to determine whether its interpretation of the law is correct. *State v. DuBray*, 2003 MT 255, ¶ 28, 317 Mont. 377, ¶ 28, 77 P.3d 247, ¶ 28.

## DISCUSSION

¶18 **Did the Youth Court err by considering evidence of the polygraph results?**

¶19 N.V. challenges the use of the polygraph examinations, which he contends indirectly entered into the court's review in the form of recommendations and evaluations by individuals who had considered the polygraph information. The State concedes that the polygraphs impermissibly entered into the court's review and requests this matter be remanded to the Youth Court for a disposition hearing uninfluenced by the polygraph reports.

¶20 This Court has consistently ruled that polygraph results, even if indirectly presented to a district court, are inadmissible. *DuBray,* ¶ 105; *State v. Anderson*, 1999 MT 58, ¶ 12, 293 Mont. 472, ¶ 12, 977 P.2d 315, ¶ 12 (polygraph evidence may not be used in any court proceeding, even during sentencing); *see also State v. Staat* (1991), 248 Mont. 291, 293, 811 P.2d 1261, 1262. This is true even if the polygraph evidence is introduced into evidence via a court-ordered sex offender evaluation. *Anderson*, ¶ 12. In *Anderson*, ¶ 14, we stated,

6

simply, that "[i]f a finder of fact, judge, hearing officer, evaluator or any other person in a similar position directly or indirectly allows polygraph results to be made a part of the review leading to a finding or recommendation in a court proceeding, no matter how careful such person may be in not disclosing such fact, the entire review leading to the finding, decision or recommendation is tainted and may not be introduced into evidence."

¶21 Here, each of the evaluations leading up to the final disposition was influenced by the polygraph information, which had been provided to the court, the youth placement committee, the probation officer, and each of the doctors and therapists performing the evaluations. Notwithstanding the court's assurances that it had not, and would not, consider the polygraph reports, the inescapable reality is that the polygraph results became part of the court's review in the form of evaluations and recommendations for placement. Accordingly, we reverse the disposition and remand this case to the Youth Court with the instruction that a new disposition hearing be held without influence from the polygraph information.

¶22 **Did the Youth Court err by considering the psychological evaluation of Dr. Robert Page?**

¶23 N.V. contends the Youth Court erred in considering Dr. Page's April 2003 evaluation. Although the youth's primary argument is that he was not advised of nor waived his constitutional rights prior to the evaluation, as required by § 41-5-1503, MCA, and thus, the evaluation was unlawfully performed, we need not reach that argument. We conclude that Dr. Page's evaluation was likewise improper pursuant to our resolution of the foregoing issue.

¶24 Montana has a broad rule of prohibiting the use of polygraph information in "any proceeding." *Staat*, 248 Mont. at 293, 811 P.2d at 1262. "In addition to precluding the direct introduction of the results of a polygraph test, it is the law in Montana that any evidence which would otherwise be admissible may be rendered inadmissible where a polygraph is used in the production of or for the purpose of influencing the outcome of such evidence." *Anderson*, ¶ 12.

¶25 Such is the case here. In preparing his evaluation, Dr. Page utilized the information provided by N.V.'s probation officer, which included the polygraph reports, as well as reports prepared by N.V.'s physician and counselors, many of whom had reviewed the polygraph information. At least one such report indicated that N.V. had failed to fully participate in sexual offender therapy–a fact that came to light after examination of the polygraph results–of which Dr. Page took note in his evaluation. Given the foregoing, we conclude the Youth Court erred in considering the evaluation.

¶26 **Did the Youth Court err by extending jurisdiction over N.V. until his twenty-fifth birthday?**

¶27 N.V. argues, and the State concedes, that the Youth Court incorrectly extended jurisdiction over this matter until N.V.'s twenty-fifth birthday. We agree.

¶28 Generally, a youth court's jurisdiction over a delinquent youth ceases when the youth reaches the age of twenty-one. Section 41-5-205(1), MCA (2001). Under the Extended Jurisdiction Prosecution Act, § 41-5-1602, MCA, provisions exist for extending the youth court's jurisdiction over a juvenile prosecution when the youth is alleged to have committed

an offense that would be a felony if committed by an adult. Section 41-5-1602(1), MCA. However, jurisdiction may not be extended when the offense is one punishable by death or life imprisonment, or when a sentence of one hundred years could be imposed. Section 41-5-1602(1), MCA.

¶29 In this case, N.V. was charged with sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. A person convicted of this offense faces a potential sentence of life imprisonment, or a term in state prison of not more than one hundred years. Section 45-5-503(2), MCA. As an offense punishable by life imprisonment or a potential sentence of one hundred years, the Extended Jurisdiction Prosecution Act does not apply. Accordingly, the Youth Court was without legal basis to extend its jurisdiction beyond N.V.'s twenty-first birthday.

¶30 **Did the Youth Court properly deny family counseling and travel expenses for N.V.'s family?**

¶31 N.V. argues that the Youth Court's denial of his request for funds to enable his family to visit him at the correctional facility and participate in counseling was in contravention to the purpose of the Montana Youth Court Act to preserve the unity and welfare of the family whenever possible.

¶32 Although it is true that one of the stated purposes of the Youth Court Act, § 41-5-101(1), MCA, is "to preserve the unity and welfare of the family whenever possible," N.V. has cited no provision which would authorize the court to award travel costs for a family. Moreover, N.V. has not presented any evidence showing that family visits would be

9

beneficial, that counseling was required, that funds were available, or that the Department of Corrections would not have made similar arrangements following disposition. Therefore, we conclude the Youth Court did not abuse its discretion in denying N.V.'s request for such funds.

¶33 **Did the Youth Court properly deny N.V.'s request for travel expenses for counsel?**

¶34 N.V. argues that, pursuant to the remuneration of appointed counsel statute, § 46-8-201, MCA, his counsel is entitled to receive reimbursement for the reasonable costs of travel to visit him at Pine Hills. N.V. contends that the court's denial of such costs prevents him from conferring with his court-appointed counsel, in violation of his Sixth Amendment rights. The State responds that denial of such costs was appropriate since there is no evidence indicating that personal consultation, as opposed to consultation via telephone, is necessary.

¶35 We have long since recognized that determining a reasonable compensation to a court-appointed attorney is a discretionary function of the district court, which we will not overturn absent an abuse of discretion. *State v. McKenzie* (1979), 186 Mont. 474, 478-79, 608 P.2d 425, 427.

¶36 In this case, we do not believe the Youth Court abused its discretion in denying N.V.'s request for reimbursement of counsel's costs to travel to Pine Hills. While it may be advantageous to meet with a client in person, there is no actual evidence supporting N.V.'s

assertions that consultation with counsel cannot occur over the telephone. Accordingly, the Youth Court's denial of such costs is affirmed.

¶37 Affirmed in part, reversed in part, and remanded to the Youth Court for further proceedings consistent with this opinion.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

11