FILED

12/20/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0041

DA 16-0041

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 330

IN THE MATTER OF:

J.W.,

    A Delinquent Youth.

APPEAL FROM:    Youth Court and District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DJ-2013-3 and
DC-2015-48
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Al Avignon, Lisa A. Banick, Avignon, Banick & Williams, PLLC,
Bozeman, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

        Steve C. Haddon, Jefferson County Attorney, Danielle Perry, Deputy
County Attorney, Boulder, Montana

        Submitted on Briefs:  October 26, 2016

               Decided:  December 20, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     J.W. appeals an order of the Fifth Judicial District Youth Court, Jefferson County, granting the State of Montana's motion to transfer J.W.'s case to the Fifth Judicial District Court, Jefferson County, and denying J.W.'s motion to suppress statements he made to treatment providers.  We address the following issues:

> *Issue One: Whether the Youth Court erred in granting the State's motion to transfer J.W.'s Youth Court proceeding to the District Court pursuant to § 41-5-208, MCA.*

> *Issue Two: Whether the Youth Court and District Court erred in imposing house arrest with restrictive conditions on J.W. pending a final disposition of his case.*

¶2     We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3     In September 2013, J.W. pled true to two counts of sexual intercourse without consent in violation of § 45-5-503, MCA, and one count of solicitation of sexual intercourse without consent in violation of §§ 45-4-101 and 45-5-503, MCA.  In January 2014, the Youth Court designated J.W. a delinquent youth and serious juvenile offender and placed him on probation, subject to several conditions, including the successful completion of a sexual offender treatment program (SOTP).  J.W. also was prohibited from having unsupervised contact with youths under the age of sixteen.

¶4     In April 2014, the State filed a petition to revoke J.W.'s probation.  J.W. pled true to unsupervised contact with a youth under the age of sixteen in violation of his probation.  On June 25, 2014, the Youth Court held a dispositional hearing.  On June 30, 2014, the Youth Court issued a disposition order revoking J.W.'s probation, committing

him to a Montana Department of Corrections (DOC) placement at Pine Hills Youth Correctional Facility until the age of eighteen, and requiring him to complete phases I and II of Pine Hills' juvenile SOTP. In July 2014, J.W. entered Pine Hills' SOTP. In March 2015, he was expelled from the SOTP.

¶5 In June 2015, the State filed a motion to revoke the District Court's disposition order, transfer J.W.'s case to the District Court pursuant to § 41-5-208, MCA, and order him to complete phases I and II of an SOTP within a secure DOC facility. The basis for the State's motion was that J.W. did not complete Pine Hills' SOTP in accordance with the June 30, 2014 disposition order. The State attached to its motion a letter written by Alice Hougardy, a licensed clinical professional counselor at Pine Hills. Hougardy's letter referenced the results of a polygraph administered to J.W. Because of the reference to the polygraph results, the Youth Court denied the State's motion, but granted the State leave to file a new motion.

¶6 In August 2015, the State filed a new motion to transfer pursuant to § 41-5-208, MCA. The State attached a letter from Hougardy that did not reference the polygraph. J.W. moved to strike the State's motion and to suppress statements he made to his SOTP treatment providers. The Youth Court scheduled a transfer hearing for September 30, 2015. Before the hearing, J.W. turned eighteen and was released from Pine Hills to the custody of his parents. The day before the hearing, J.W. filed an emergency motion to vacate the hearing on the basis that there was nothing for the Youth Court to transfer because his disposition terminated when he turned eighteen. The Youth Court denied J.W.'s motion to vacate and proceeded with the transfer hearing.

3

¶7 At the hearing, J.W. objected to evidence and testimony presented by Alicia Esteves, a program manager in Pine Hills' sex offender unit, and by Hougardy, claiming that their testimony regarding statements J.W. made during the SOTP violated his right against self-incrimination. The Youth Court overruled J.W.'s evidentiary objections and reserved ruling on the constitutional issues. At the close of the hearing, the Youth Court took the parties' remaining motions under advisement and indicated it would hold a separate hearing regarding J.W.'s placement if it determined transfer was appropriate. The Youth Court ordered J.W. to remain under house arrest and in the custody of his parents pending further proceedings.

¶8 In October 2015, the State filed a motion to revoke J.W.'s release. J.W. then filed a petition for a writ of supervisory control with this Court, asking us to vacate the Youth Court's interim order requiring J.W. to be on house arrest and in the custody of his parents. We denied J.W.'s petition. On November 25, 2015, the Youth Court issued an order transferring J.W.'s case to the District Court to ensure compliance with the Youth Court's June 30, 2014 disposition requirement that J.W. successfully complete an SOTP. The Youth Court also denied J.W.'s motion to suppress and strike.

¶9 On December 16, 2015, the District Court held a dispositional hearing. J.W. argued that he could not be incarcerated or supervised by the DOC and asked the District Court to modify the terms of his house arrest. The District Court adopted the interim order imposed by the Youth Court requiring J.W. to remain on house arrest and in the custody of his parents. Before the District Court entered a final dispositional order, J.W. filed a notice of appeal with this Court. J.W. appeals the Youth Court's November 25,

2015 order transferring his case to the District Court and the Youth Court and District Court's interim orders placing him on house arrest.

## STANDARDS OF REVIEW

¶10 We review for correctness a youth court's conclusions of law, including its interpretation and application of constitutional provisions and the Montana Youth Court Act. *See In re S.M.K.-S.H.*, 2012 MT 281, ¶ 16, 367 Mont. 176, 290 P.3d 718. We review a youth court's factual findings for clear error. *In re Z.M.*, 2007 MT 122, ¶ 19, 337 Mont. 278, 160 P.3d 490. A finding is clearly erroneous if it is not supported by substantial evidence, if the youth court clearly misapprehended the effect of the evidence, or if this Court is left with a "definite and firm" conviction that the youth court made a mistake. *Z.M.*, ¶ 19. Additionally, we will affirm a youth court's ruling when it reaches the right result, even if it reaches that result for the wrong reason. *See In re A.D.T.*, 2015 MT 178, ¶ 10, 379 Mont. 452, 351 P.3d 682.

## DISCUSSION

¶11 *Issue One: Whether the Youth Court erred in granting the State's motion to transfer J.W.'s Youth Court proceeding to the District Court pursuant to § 41-5-208, MCA.*

¶12 The transfer provision of the Youth Court Act, § 41-5-208(1), MCA, provides, in relevant part:

> [T]he [youth] court may, on the youth's motion or the motion of the county attorney, transfer jurisdiction to the district court and order the transfer of supervisory responsibility from juvenile probation services to adult probation services. A transfer under this section may be made to ensure continued compliance with the court's disposition under 41-5-1512 or 41-5-1513 . . . .

5

In its November 25, 2015 order, the Youth Court held that transferring J.W.'s case to the District Court was necessary to ensure compliance with the Youth Court's June 30, 2014 order because J.W. failed to complete an SOTP. J.W. contends that, in reaching this decision, the Youth Court impermissibly considered evidence presented by the State that was tainted by his polygraph results and statements to treatment providers that should have been suppressed. He contends his polygraph argument is supported by *In re N.V.*, 2004 MT 80, 320 Mont. 442, 87 P.3d 510, and *State v. Anderson*, 1999 MT 58, 293 Mont. 472, 977 P.2d 315.

¶13 In *Anderson*, ¶¶ 5, 16, we reversed a defendant's sentence because his probation officer, in making her sentencing recommendations, considered a psychosexual evaluation that relied in part on the results of a polygraph. Similarly, in *N.V.*, ¶¶ 23-25, we held that a youth court erred in considering a psychological evaluation that was prepared using polygraph information. *Anderson* and *N.V.* are inapposite to the present case. In this case, the Youth Court did not need to consider any evaluations of J.W., because there is no dispute that J.W. did not complete Pine Hills' SOTP. In a letter to the Youth Court dated March 15, 2015, J.W. wrote:

> I regret to inform you that you will be receiving a letter from Pine Hills notifying you that I have been terminated from the [SOTP] due to constant stalling and devient [sic] behaviors, as well as minipulation [sic] of facility staff and peers.
>
> Your Honor, I am sorry to say that the report is valid, and I have failed the program. I understand by this that I have also violated your sentencing order.

6

Although J.W. claims this letter was improperly admitted over his objection "because it was precipitated after Hougardy showed J.W. her March 8, 2015 letter," the Youth Court found that there was "no evidence that any part of this letter was initiated . . . in connection with the polygraph." In his briefing before this Court, J.W. makes a blanket assertion that the District Court erred in overruling his objection but does not point to any evidence linking J.W.'s letter to the polygraph information. J.W.'s letter does not mention a polygraph, and J.W. never testified regarding his motives for sending the letter. In his letter, J.W. wrote: "I hope you understand that this letter is my own doing w/o anyone's assistance. This is the truth, I wanted to man up and tell you the truth myself." Therefore, we cannot conclude that the Youth Court erred in admitting the letter.

¶14 Irrespective of how or why J.W. was removed from the SOTP, he undisputedly did not complete that portion of his disposition while under the Youth Court's jurisdiction. Additionally, the Youth Court's requirement that J.W. successfully complete an SOTP was not, as J.W. argues, impossible. Under the jurisdiction of the District Court, he will still have the opportunity to comply with that condition of his disposition. The Youth Court did not err in granting the State's motion to transfer J.W.'s Youth Court proceeding "to ensure continued compliance with the court's disposition." *See* § 41-5-208(1), MCA.

¶15 We also reject J.W.'s argument that the Youth Court's application of § 41-5-208, MCA, violated his right to be free from double jeopardy. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."); Mont. Const. art. II, § 25 ("No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction."). J.W. failed to comply with the

7

Youth Court's original disposition order requiring him to successfully complete the SOTP while at Pine Hills. The State's effort to ensure that J.W. completes the unfulfilled portion of the disposition does not constitute additional punishment, and thus does not constitute double jeopardy. Rather, transfer of J.W.'s case is necessary to allow him to comply with the disposition. Further, although the Youth Court's June 30, 2014 order revoking J.W.'s probation does not explicitly state that J.W.'s case may be transferred to the District Court, the State's ability to request a transfer is inherent under § 41-5-208, MCA. Additionally, the Youth Court mentioned the State's ability to transfer J.W.'s case twice during its June 25, 2014 dispositional hearing, stating: "if [J.W.] doesn't complete sex offender treatment at age eighteen, I imagine the State will probably be coming back and filing a [§ 41-5-]208 petition to transfer him to adult supervision." The Youth Court correctly rejected J.W.'s double-jeopardy claim.

¶16 *Issue Two: Whether the Youth Court and District Court erred in imposing house arrest with restrictive conditions on J.W. pending a final disposition of his case.*

¶17 The jurisdiction provision of the Youth Court Act, § 41-5-203(1), MCA, provides, in relevant part:

> Except as provided in subsection (2) and for cases filed in the district court under 41-5-206, the [youth] court has exclusive original jurisdiction of all proceedings under the Montana Youth Court Act in which a youth is alleged to be a delinquent youth or a youth in need of intervention or concerning any person under 21 years of age charged with having violated any law of the state . . . prior to having become 18 years of age.

The enumerated exceptions do not apply in this case. Section 41-5-203(3)(a), MCA, provides that a youth court has jurisdiction to "transfer a youth court case to the district court after notice and hearing." A youth court may modify an order pertaining to a youth

8

committed to DOC upon notice to DOC and a subsequent hearing. Section 41-5-1422(2), MCA. Pursuant to § 41-5-1512(1)(a) and (k), MCA, a youth court may place a youth on probation and under house arrest.

¶18 Pursuant to the Youth Court's June 30, 2014 order, J.W. no longer was under DOC supervision once he turned eighteen years old. However, pursuant to § 41-5-203(1) and (3)(a), MCA, the Youth Court had jurisdiction over J.W. until he turned twenty-one or until it transferred jurisdiction to the District Court. As discussed in our resolution of Issue One, J.W. undisputedly did not comply with the June 20, 2014 order. As a result, the Youth Court modified its order, after holding a hearing, to ensure J.W. remained under supervision until he complied with his disposition. The District Court, once J.W.'s case was transferred to it, had the authority to impose conditions "consistent with the underlying youth court disposition." *A.D.T.*, ¶ 15. The District Court's continuation of J.W.'s house arrest in keeping with the Youth Court's order is consistent with the underlying Youth Court disposition order.

¶19 The State concedes that "some of the restrictions on J.W.'s freedom of movement on home arrest appear to violate the statutory limitations on that disposition" set forth in §§ 41-5-1512(1)(k)and 46-18-1003(1)(a), MCA. We therefore instruct the District Court to abide by those statutory provisions, as conceded by the State, if J.W.'s house arrest is continued.

**CONCLUSION**

¶20    We affirm the District Court's decision and order.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT